# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs June 28, 2012

## APRIL HUNTER RIGSBY (EDMONDS) v. AARON R. EDMONDS

**Appeal from the Probate and Family Court for Cumberland County**
**No. 08PF556      Larry Warner, Judge**

_____

### No. E2011-02265-COA-R3-CV-FILED-AUGUST 9, 2012

_____

April Hunter Rigsby (Edmonds) ("Mother") and Aaron R. Edmonds ("Father") divorced in 2008. Mother and Father are the parents of the minor child, Elijah E. ("the Child"). In the permanent parenting plan entered with the divorce, Mother was designated as the Child's primary residential parent. Mother and Father were to have equal time with the Child. Mother later petitioned the Probate and Family Court for Cumberland County ("the Trial Court") to relocate with the Child. The Trial Court granted Mother's petition. In 2011, Father filed a petition to modify the final decree of divorce, attached to which was his new proposed permanent parenting plan wherein he requested to be designated the Child's primary residential parent. Father argued, among other things, that because the Child was approaching school age, the child would be better served going to school in Father's community. Mother filed an answer to Father's petition, including her own proposed new permanent parenting plan. The Trial Court found in favor of Father, designated Father as the new primary residential parent of the Child, and set a new parenting schedule. The Trial Court also ordered Mother to pay child support. Mother appeals. We hold that no material change of circumstances occurred to justify a change in the Child's primary residential parent. We affirm, in part, and, reverse, in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court Affirmed, in Part, and Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, April Hunter Rigsby (Edmonds).

Howard L. Upchurch, Pikeville, Tennessee, for the appellee, Aaron R. Edmonds.

# OPINION

## Background

Mother and Father, the parents of the Child, divorced in October 2008. Mother was named as the Child's primary residential parent in the permanent parenting plan. In July 2009, the Trial Court approved a Petition to Relocate filed by Mother, wherein Mother requested that she be allowed to move with the Child to Ohio. After additional review, the Trial Court later entered a final order to this effect in February 2010.

Father filed a Petition to Modify in March 2011. Father attached his proposed permanent parenting plan to this petition. In his petition, Father alleged that, as the Child was approaching the age to start kindergarten, "it will no longer be feasible for the parties to rotate and alternate parenting times on a weekly basis." Father also alleged that Mother's attention was diverted by her soon to be born child and a stepchild who has behavioral issues. Mother filed an answer in opposition to Father's petition, as well as her own new proposed permanent parenting plan. Mother filed a motion for default judgment when Father did not answer the counter-petition, but Father eventually filed an answer. This matter was heard in August 2011.

Father testified first. Father, 38 years old, stated that, save for approximately four years of military service, he has lived in Cumberland County, Tennessee all of his life. Father testified that he has a number of relatives in Cumberland County. Father stated his parents and grandparents assisted with the Child, aged five years old at the time of trial, and saw the Child on a regular basis.

Father answered a number of questions pertaining to his work and personal life. Father lives in a house he purchased from his grandmother in 2002. This was the house he and Mother had occupied during their marriage. Father stated that he works at Cumberland Mountain Stone and had for 14 years. Father is a production supervisor, taking care of quality issues with stone. Father testified that he works Monday through Friday, from 7:00 a.m. until 5:00 p.m., and some Saturdays from 7:00 a.m. until 3:30 p.m. Father stated that he had regularly attended church for three years, and attended church currently with the Child. Additionally, Father testified that he had dated Judy Sexton for nine months. Ms. Sexton has two children of her own. Father stated that the Child and Ms. Sexton have a good relationship. Father testified that the Child had met Ms. Sexton's children, but not at his home.

Father testified that since July 2009, he and Mother had alternating parenting time with the Child on a bi-weekly basis. Father stated that Wife lived somewhere around

Cincinnati, Ohio. Wife transported the Child to and from the pickup point. Father stated this arrangement worked "fairly well." Father stated that his request to the Trial Court was to be designated the Child's primary residential parent and that he primarily have the Child during the school year.

Father also was asked about his care of the Child. Father stated that he used day care service for the Child. Bridgette Perry, a distant relative of Father's, was the Child's babysitter. Before Ms. Perry, Janette Wilburn was the Child's babysitter, but Father stopped her services when the child began picking up "habits." Regarding his activities with the Child, Father testified that he and the Child would: "[p]lay hide and seek, lots of times we memorize things, like, work on Bible verses, memorize, he's memorizing stuff for kindergarten, like nursery rhymes and such, play a lot of hide and seek outside, ride four wheelers some, and hiking."

Father testified that Mother had given birth to a child with her current husband, and that an older child of her husband also lived with them. Father testified that this older child has behavioral issues. Father stated that he, on the other hand, has no other children in his home.

Regarding why the Child should attend school in Cumberland County rather than at Mother's home area of Cincinnati, Father stated:

> Well, I think it's important in child's life that he have people around him that he knows and he understands that can encourage him. Here in this community, if he stayed, he would have grandparents there at the ball games, he has more access to his family. I believe that I can give him a better education at home with, you know, during, during the days or nights when he's at home, you know, working with him one on one. There would be, you know, less distractions, you know, for him to build a sense of belonging here by staying in the county.

Father then answered certain questions relating to his home and issues concerning heating, in particular. Father stated that his house was heated with gas. The house was an "older homestead house." Father acknowledged that he had used a kerosene heater to heat an enclosed back porch area, but that this did not adversely affect the Child.

Father then was cross-examined. Father acknowledged that at times when he was married to Mother, his stepmother was hesitant to take care of the Child. Father stated that his stepmother was no longer hesitant to care for the Child. Father also acknowledged that, given his early work schedule and the starting time of school, the Child would need to

-3-

arrive at school around 6:45 a.m. to participate in a "before-school" program. Father affirmed that the Child would be spending around 12 hours per day in the school system as a result of Father's work schedule. Father testified that he has visited Mother's current home, and the Child appeared to be happy in it.

Mother testified next. Mother stated that she lives in Batavia, Ohio, which is regarded as a suburb of Cincinnati. Mother testified to the Child's home life. Mother stated the Child enjoyed going to local duck ponds. Mother testified that the Child has a room which he shares with his half-brother. Mother testified about Ryan, her current husband's 11 year old son, who was diagnosed with ADHD. Mother stated that Ryan and the Child get along very well. Mother testified that the Child had gone to a pre-K program. Mother testified that the school she intended to send the Child to was rated as excellent. Mother stated that the Child knows several of the area children.

Mother testified that she works as a treatment coordinator at an orthodontist's office. Mother's hours vary during the week; on days when she has to be in by 8:00 a.m., she usually gets the Child to day care by 7:00 a.m. Mother testified that her parents live in Adairville, Kentucky and are retired and available to assist with the Child. Mother's current husband, Max Rigsby, is a demand planner, a type of sales forecaster. Regarding Ryan's condition, Mother testified that he mainly has an issue of focus, and that he is not violent. Mother said her home has internet, and that if Father obtained internet capability, she would permit the Child to communicate with Father face-to-face via the internet. Mother also testified that she wanted child support instated in this case.

Mother then was cross-examined. Mother acknowledged that her parents live closer to Cumberland County than Cincinatti. Asked whether she got along with Father's family, Mother stated that Father's family essentially had disowned her following the divorce. Mother acknowledged that she had three residences in three years, whereas Father had one. Mother also acknowledged having changed the Child's day care service. Summing up the parenting arrangement, Mother testified that since April 20 of that year, Father had "two weeks on two weeks off" with the Child. The Child basically had spent an equal amount of time with each parent since the divorce.

Max Rigsby, Mother's husband, took the stand. Mr. Rigsby's testimony primarily addressed an incident when the Child required surgery. Mr. Rigsby stated that though Father drove up to visit, he left before the Child had completely recovered from the anesthesia. Father, on rebuttal, testified that he thought the Child had sufficiently come around safely such that Father reasonably could return home. As it turned out, the Child had difficulty recovering from the anesthesia but did completely recover after this "scary" incident.

In September 2011, the Trial Court entered an order granting Father's petition and naming him the primary residential parent of the Child, stating:

This cause came to be heard on the 5th day of August, 2011, before the Honorable Larry M. Warner, Probate and Family Court Judge for Cumberland County, Tennessee, upon the Petition to Modify filed by the Plaintiff, Aaron R. Edmonds; service of process of the same upon the Defendant, April Hunter Edmonds (Rigsby); the Answer and Counter-Petition filed by the Defendant; the Plaintiff's Answer to the Counter-Petition; the testimony of the parties and their witnesses as heard in open Court; the exhibits thereto; and the entire record as a whole, from all of which it duly appears to the Court as follows:

1. That the Motion Judgment by Default filed by the Defendant should be denied, in as much as each party sought to enroll the child in school in the states of their respective residencies in their initial pleadings, the Defendant's Motion for Judgment by Default was not filed more than five (5) days prior to the hearing, an Answer was transmitted via facsimile to the Defendant immediately following the filing of the Motion, and the Defendant did not suffer any prejudice by virtue of the delay by the Plaintiff in the filing of his Answer;

2. That even though the Defendant is listed as the primary residential parent in Parenting Plans previously filed in this action, the parties have exercised a joint and equal parenting arrangement with their son, [Elijah E.], born 2/24/2006, and conducted their parenting times accordingly;

3. That the Permanent Parenting Plan currently enforced and followed by the parties is now unworkable, given the child's entry into kindergarten and the commencement of his compulsory education. It is no longer feasible for the parties to rotate and alternate parenting times on a weekly or bi-weekly basis as they have done since entry of the Final Decree in this action on October 20, 2008. As such, the Court finds that a material change of circumstances has occurred which requires a modification of the Parenting Plan and Orders heretofore entered in this cause;

4. That even though both parties have established adequate homes for the child and are each and individually fit and proper persons to be designated the primary residential parent of the child, the Court finds that the stability and continuity available to the child through the Plaintiff and his home and the availability of third party assistance to the Plaintiff and the child through the

Plaintiff's extended family in Cumberland County justifies the designation of the Plaintiff as the primary residential parent of the child, and that the best interests of the child will be served by modifying the Permanent Parenting Plan and Order accordingly;

5. That the Defendant should be awarded the following parenting times: during the child's fall and spring breaks; from the time school is dismissed for Christmas recess until December 26 on all odd years, beginning 2011 and all odd years thereafter; any and all long weekends (3 day weekends); and for the child's summer recess and summer vacation from school, beginning the second full week following the child's dismissal from school until two weeks prior to the child's return to school, with the Plaintiff to have one complete week during the Defendant's summer parenting times for a vacation with the child;

6. That the parties shall exchange the child at the commencement and conclusion of the Defendant's parenting times in London, Kentucky;

7. That the Plaintiff did not request an award of child support during this hearing from the Defendant, and, therefore, the issue of support should be reserved;

8. That the parties' respective requests for the recovery of attorney's fees from the other should be denied;

9. That the non-discretionary costs of this cause should be assessed equally to the parties, one-half (½) to be paid by the Plaintiff and one-half (½) to be paid by the Defendant.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1. That the Motion for Judgment by Default filed by the Defendant, April Hunter Rigsby (Edmonds), shall be and is hereby denied.

2. That the Plaintiff, Aaron R. Edmonds, shall be and is hereby designated the primary residential parent of the parties' one minor child, [Elijah E.], born 2/24/2006, and the Permanent Parenting Plan and Orders heretofore entered in this cause shall be and are hereby modified accordingly.

3.   That the Defendant shall be is hereby awarded the following parenting times with the parties' minor child, and the Permanent Parenting Plan and Orders heretofore entered in this cause shall be and are hereby modified accordingly:

(1)     During the child's fall and spring breaks;

(2)     During the Christmas holidays from the day school is dismissed until December 26 on all odd years, beginning 2011 and all odd years thereafter;

(3)     During any long weekends (3 day weekends);

(4)     During the child's summer recess and summer vacation from school, beginning the second full week following the child's dismissal from school until two (2) weeks prior to the child's return to school, with the Plaintiff to have one (1) week of visitation for a vacation with the child during the summer.

4.   That the parties shall be and are hereby directed to exchange the child at the commencement and conclusion of the Defendant's parenting times in London, Kentucky.

5.   That the issue of child support shall be and is hereby reserved for further and future hearings, following the filing of a proper petition by either party.

6.   That the parties' respective requests for the recovery of attorney's fees from the other shall be and are hereby denied.

7. That the non-discretionary costs of this cause shall be and are hereby assessed to the parties equally, one-half (½) to be paid by the Plaintiff and one-half (½) to be paid by the Defendant, for which execution may issue, if necessary.

Mother appealed to this Court in October 2011. In January 2012, we directed Mother to show cause as to why her appeal should not be dismissed because of the reserved matter of child support. Subsequently, the record was supplemented with an order from the Trial Court ordering Mother to pay child support at the rate of $337 per month. We now address Mother's appeal.

**Discussion**

We restate the issues that Mother raises on appeal as follows: 1) whether the Trial Court erred in finding that a material change of circumstances had occurred such as to justify a change in the permanent parenting plan in this case and consequently designating Father as the primary residential parent of the Child; and, 2) whether the Trial Court erred in ordering Mother to pay child support.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

The parties do not agree on the proper legal standard applicable to this case. Father apparently argues that Tenn. Code Ann. § 36-6-101 (a)(2)(C), the standard regarding changes to a parenting schedule, is applicable. Father rightly notes that this standard presents a "very low threshold for establishing a material change of circumstances . . . ." As Mother points out regarding this standard, we have previously elaborated:

> As a result of the 2004 amendment, Tennessee now has a different set of criteria for determining whether a material change of circumstance has occurred to justify a modification of a "residential parenting schedule" and the specifics of such a schedule. The amendment, specifically the addition of subsection (a)(2)(C), establishes different criteria and a lower threshold for modification of a residential parenting schedule. *See Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2, n. 3 (Tenn. Ct. App. Aug. 18, 2006) (holding that Tenn. Code Ann. § 36-6-101(a)(2)(C) "sets a very low threshold for establishing a material change of circumstances"). However, the statutory criteria pertaining to a modification of "custody"-the term used in the statute, which we equate to the designation of "primary residential parent" and matters more substantive than a change of schedule-remain unchanged. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B).

*Scofield v. Scofield*, M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. February 28, 2007), *no appl. perm. appeal filed*.

This case, however, involves a change not only of the parenting schedule but also of the primary residential parent and thus is also about custody. We believe the proper

standard for a change of primary residential parent is found at Tenn. Code Ann. § 36-6-101 (a)(2)(B), and the case law interpreting it.

Father argues that Mother's designation as primary residential parent actually was a mistake by the Trial Court. Indeed, the Trial Court, in its oral ruling at trial, stated that the designation of Mother as primary residential parent was an "oversight." Nevertheless, Tennessee law requires, in matters of custody determination, the designation of one parent as a child's primary residential parent. *Brown v. Brown*, E2011-00421-COA-R3-CV, 2012 WL 1267872, at *7 (Tenn. Ct. App. April 13, 2012), *appl. perm. appeal pending* (quoting *Cummings v. Cummings*, M2003-00086-COA-R3-CV, 2004 WL 2346000, at *13 (Tenn. Ct. App. October 15, 2004), *no appl. perm. appeal filed*). Mother was designated the primary residential parent in the permanent parenting plan approved by the Trial Court as part of the parties' final divorce. We are not charged with divining a court's unwritten intentions, and it is well-established that a court "speaks through its orders . . . ." *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). Mother was the duly designated primary residential parent of the Child even though the Child spent equal time with each parent. Thus, we will apply the Tenn. Code Ann. § 36-6-101(a)(2)(B) standard for efforts to change a child's primary residential parent.

Existing custody arrangements are favored because children thrive in stable environments. *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). A custody decision, once made and implemented, is considered res judicata upon the facts in existence or those which were reasonably foreseeable when the decision was made. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). However, our Supreme Court has held that a trial court may modify an award of child custody "when both a material change of circumstances has occurred and a change of custody is in the child's best interests." *Kendrick v. Shoemake*, 90 S.W.3d 566, 568 (Tenn. 2002). According to *Kendrick*:

> As explained in *Blair [v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002) ], the "threshold issue" is whether a material change in circumstances has occurred after the initial custody determination. *Id*. at 150. While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." *Id*. (citations omitted).

*Kendrick*, 90 S.W.3d at 570. *See also* Tenn. Code Ann. § 36–6–101(a)(2)(B) (2010).

*Kendrick* went on to explain that if a material change in circumstances has been proven, "it must then be determined whether the modification is in the child's best interests ... according to the factors enumerated in Tennessee Code Annotated section 36–6–106." *Kendrick*, 90 S.W.3d at 570 (footnote omitted). It necessarily follows that if no material change in circumstances has been proven, the trial court "is not required to make a best interests determination and must deny the request for a change of custody." *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999).

In its order, the Trial Court stated, as its rationale for finding a material change of circumstances:

> 3. That the Permanent Parenting Plan currently enforced and followed by the parties is now unworkable, given the child's entry into kindergarten and the commencement of his compulsory education. It is no longer feasible for the parties to rotate and alternate parenting times on a weekly or bi-weekly basis as they have done since entry of the Final Decree in this action on October 20, 2008. As such, the Court finds that a material change of circumstances has occurred which requires a modification of the Parenting Plan and Orders heretofore entered in this cause;

> 4. That even though both parties have established adequate homes for the child and are each and individually fit and proper persons to be designated the primary residential parent of the child, the Court finds that the stability and continuity available to the child through the Plaintiff and his home and the availability of third party assistance to the Plaintiff and the child through the Plaintiff's extended family in Cumberland County justifies the designation of the Plaintiff as the primary residential parent of the child, and that the best interests of the child will be served by modifying the Permanent Parenting Plan and Order . . . .

We, however, do not find these stated reasons to be a sufficient basis to establish a material change of circumstances sufficient to justify a change of the primary residential parent. The Trial Court permitted Mother to move with the Child to Ohio in 2010. This case was tried in August 2011. It was foreseeable in 2010 that the Child would grow a year or so older and need to enter a school system somewhere. The fact that a child gets a year older every year, inevitable as it is, cannot be regarded on its own as inherently a material change of circumstances for purposes of altering the primary residential parent.

Regarding the Trial Court's finding that " the stability and continuity available to the child . . . through the Plaintiff's extended family in Cumberland County justifies the designation of the Plaintiff as the primary residential parent of the child," we disagree. At any rate, we do not believe this represents the correct standard as it addresses the Child's best interest and not first whether there was a material change. The evidence in the record on appeal demonstrates that the Child enjoys an adequate home both with Father and also with Mother and her husband. Indeed, the Trial Court stated in its order that "both parties have established adequate homes for the child and are each and individually fit and proper persons to be designated the primary residential parent of the child . . . ." The evidence does not preponderate against these findings that both parties are fit and proper parents with adequate homes for the Child.

No new and unanticipated factual developments have occurred in this case that constitute a material change of circumstances under Tenn. Code Ann. § 36-6-101(a)(2)(B) sufficient to warrant a change in the designated primary residential parent. Therefore, nothing has occurred to warrant removing Mother as the primary residential parent of the Child. We reverse the Trial Court on this issue.[1]

While we hold that no material change of circumstances has occurred sufficient to justify changing the Child's primary residential parent from Mother to Father, we do believe that the Trial Court was correct in finding a material change of circumstances had occurred under Tenn. Code Ann. § 36-6-101(a)(2)(C) sufficient to require that the parenting schedule in this case be modified to account for the Child's school schedule. The evidence preponderates in favor of the Trial Court's finding that the parents "alternating parenting times on a weekly or bi-weekly basis . . ." is no longer workable because the Child is in school.

The record shows that, as the Trial Court found, both Mother and Father are fit parents, and the Child's welfare and best interests will be furthered by spending significant time with each parent. We, therefore, remand this cause to the Trial Court for it to modify the residential parenting schedule in keeping with this Opinion, and, the Child's best interests, as required.

We note that Mother, in her brief, sets out the following suggestion if we should affirm the Trial Court's designation of Father as the primary residential parent:

---

[1]As we find that the evidence preponderates against the Trial Court's finding that a material change of circumstances occurred sufficient to justify a change of the primary residential parent, the threshold question, we do not reach a best interests analysis.

The Mother suggests that, in order to foster the public policy of the State to promote the maintenance of the parent-child relationship, it is imperative that the Mother's visitation privileges with the child be substantially expanded to include: all summer visitation with the exception of one week; all three-day weekend visitation during the school; all Fall and Spring breaks; one weekend a month at maternal grandparents home in Kentucky; and Mother's Day weekend.

As this schedule is what Mother proposed for her parenting time if Father is the primary residential parent, a similar type schedule for Father's parenting time would seem to be a sound starting point for the Trial Court to use in its modification of the parenting schedule with Mother as the primary residential parent.

We next address whether the Trial Court erred in ordering Mother to pay child support. The Trial Court reserved the issue of child support in its order following trial, but later ordered Mother to pay child support. Mother argues that it was inequitable for the Trial Court to order her to pay child support when she never received any child support while she was transporting the Child from Ohio to Cumberland County, Tennessee twice a month for two years. While we do question why no child support apparently was required to be paid by either parent until this last Order of the Trial Court, Mother cites to no law that supports her position on this issue. We are not persuaded that the Trial Court committed any reversible error with respect to setting child support.[2] In any event, given our holding reversing the Trial Court on its designation of primary residential parent, a new permanent parenting plan in keeping with our Opinion will have to be entered in this case. Therefore, we will not overturn the Trial Court's previous child support order. However, a new child support payment schedule must be determined and implemented on remand when the Trial Court enters a new permanent parenting plan reflecting Mother's status as primary residential parent and setting a new parenting schedule.

In sum, we reverse the Trial Court as to its designation of Father as the Child's primary residential parent, but do not disturb the Trial Court's award of child support to Father while Father was the designated primary residential parent. We remand this cause to the Trial Court for the implementation of a new permanent parenting plan consistent with our Opinion.

## Conclusion

---

[2]Mother also asserts that the child support order was entered *nunc pro tunc* to the date of trial, but we can not discern this from the record.

The judgment of the Trial Court is affirmed, in part, and, reversed, in part, and this cause is remanded to the Trial Court for proceedings consistent with this Opinion, including the adoption of a new permanent parenting plan. The costs on appeal are assessed one-half against the Appellant, April Hunter Rigsby (Edmonds), and her surety, if any; and, one-half against the Appellee, Aaron R. Edmonds.

_____
D. MICHAEL SWINEY, JUDGE