IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 5, 2012

**IN RE PRESTON C. G.**

**Appeal from the Juvenile Court for Maury County**
**No. 09JV178     George L. Lovell, Judge**

**No. M2011-01777-COA-R3-JV - Filed November 15, 2012**

This appeal involves Father's petition to be named primary residential parent of his son. The trial court held that a material change in circumstances had occurred and that it was in the child's best interest to spend more time with the Father; however, the court determined that Mother should remain the child's primary residential parent. Father appeals the trial court's determination that it is in the best interest of the parties' son for Mother to be the primary residential parent. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Jennifer Sheppard, Nashville, Tennessee, for the appellant, Damoon G.

No appellee brief filed.

**OPINION**

FACTS AND PROCEDURAL HISTORY

Damoon G. ("Father") and Natasha W. ("Mother") are the parents of a son, Preston G., born March 30, 2001. Mother and Father were never married. In February 2007, the Davidson County Juvenile Court entered an order granting Mother and Father joint custody and equal parenting time with Preston.[1] The residential parenting schedule required Mother

---

[1] Although the record on appeal does not include the February 2007 order, an August 11, 2010 order of the Juvenile Court of Maury County references a February 16, 2007 order establishing joint custody
(continued...)

and Father to alternate parenting time every other week.

On June 22, 2010, Father filed a petition to modify custody requesting the court to designate him as Preston's primary residential parent. The juvenile court held a hearing on the petition and entered an order on August 11, 2010. The court determined that both Mother and Father had "acquiesced in mutually abandoning the prior order" and that the prior order was not feasible now that the parties live in separate counties and the child is of school age. The court designated Mother as the primary residential parent and allowed Father parenting time on the first, third, and fifth weekends of the month. The parties shared parenting time during fall and spring breaks and alternated holidays.

The dispute giving rise to this appeal originated in April 2011 when Father filed another petition to modify custody, seeking to be designated as the primary residential parent of Preston. Father alleged that there had been a material change in circumstances since the entry of the August 2010 order, based on Mother's pleading guilty and being convicted of two counts of possession of a controlled substance resulting in a two-year suspended sentence, her pending harassment charge, her screaming obscenities about Father or his family when on the telephone with the child, her failure to foster a good relationship between the child and Father, and her inconsistent employment.

The trial court held a hearing on the petition on June 24, 2011 at which Mother, Father, and Preston's paternal aunt testified. The court entered an order on July 12, 2011 holding that a material change of circumstance had occurred since its last order involving custody of the child. The court conducted a detailed best interest analysis pursuant to Tenn. Code Ann. § 36-6-106 and held Father's parenting time should increase to include an additional weekend per month as well as Preston's entire two-week fall and spring breaks. The court determined Mother should remain the primary residential parent.

Father appeals and asserts the trial court erred in failing to name him the primary residential parent of Preston.

STANDARD OF REVIEW

In cases involving custody and visitation, our review of the trial court's findings of fact is de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). Custody decisions "often hinge on subtle factors, including the parents' demeanor and

---

[1](...continued)
between the parties.

credibility." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). "Although we accord trial courts broad discretion in these decisions, they must still base their decisions on the proof and upon the appropriate application of the applicable principles of law." *Thompson v. Thompson*, No. M2011-02438-COA-R3-CV, 2012 WL 5266319, at *5 (Tenn. Ct. App. Oct. 24, 2012).

## ANALYSIS

In order to modify custody in an existing parenting plan, a trial court must engage in a two-step analysis. First, the court must determine whether a material change in circumstances has occurred since the entry of the prior order.[2] Tenn. Code Ann. § 36-6-101(a)(2)(B); *Boyer*, 238 S.W.3d at 259. Pursuant to Tenn. Code Ann. § 36-6-101(a)(2)(B), the party seeking modification has the burden of proving a material change in circumstances. Second, upon finding a material change in circumstances has occurred, the court must consider the factors enumerated in Tenn. Code Ann. § 36-6-106(a) and make a determination whether it is in the child's best interests to modify the current custody arrangement. *Kendrick*, 90 S.W.3d at 570.

I. Substantial and Material Change in Circumstances

With respect to the threshold issue, the trial court held that a substantial and material change in circumstances had occurred since the entry of the August 11, 2010 order. Specifically, the court found that Mother had been convicted of a misdemeanor crime and sentenced to probation and that Mother made "grossly inappropriate comments, both by content and temperament," to Preston during a series of phone conversations that were recorded by Father.[3]

The following three factors are considered appropriate bases for holding that a material change in circumstances has occurred: "(1) the change occurred 'after the entry of the order sought to be modified,' (2) the change was 'not known or reasonably anticipated when the order was entered,' and (3) the change 'affects the child's well-being in a

---

[2] Tennessee has different criteria for determining whether a material change of circumstance has occurred to justify modification of "custody" or a "residential parenting schedule." Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C). In this case, the statutory criteria related to modification of "custody" in Tenn. Code Ann. § 36-6-101(a)(2)(B) is the proper standard because Father has requested a change in the child's primary residential parent. *See Rigsby v. Edmonds*, No. E2011-02265-COA-R3-CV, 2012 WL 3218082, at *6-7 (Tenn. Ct. App. Aug. 9, 2012).

[3] Mother does not appeal the trial court's determination that a substantial and material change in circumstances occurred.

meaningful way.'" *Dishman v. Dishman*, No. M2008-01194-COA-R3-CV, 2009 WL 1181341, at *2 (Tenn. Ct. App. May 1, 2009) (quoting *Kendrick*, 90 S.W.3d at 570). From our review of the record, and according the appropriate deference to the trial court's evaluation of the witnesses' credibility, we conclude that the evidence does not preponderate against the trial court's finding that there has been a material change in circumstances since the entry of the August 11, 2010 order. Mother's criminal behavior and her inappropriate comments toward Preston constituted substantial and material changes that affected the child's well-being in a meaningful way.

II.  Best Interests of the Child

Father's primary contention on appeal is that the trial court erred in determining it is in Preston's best interests for Mother to remain Preston's primary residential parent. Father argues that Mother's unwillingness to foster a relationship between him and the child should necessitate a change in Mother's status as primary residential parent.

In making its decision in this case, the trial court considered the factors at Tenn. Code Ann. § 36-6-106(a) and conducted a best interests analysis as follows:

(1) The love and emotional ties between parent and child: The child loves both parents. This factor does not favor either parent.

(2) Disposition to care for the child: Father and his extended family have more financial means, but Mother has been able to provide for the basics all the child's life. This factor favors Mother.

(3) Continuity in a stable, satisfactory environment: The child has been in Mother's care and she has been the sole caregiver for the vast majority of his life. However, the Court has real concerns about how satisfactory that environment is. If the language and tone she uses at home are anywhere remotely like the language and tone of her conversations over the phone with the child, she should not be able to talk to the child. This factor does not favor either parent.

(4) Stability of the family unit: Father's family lives together and seems supportive of the child. Mother does not have close family support and is raising this child and another child, both of whom were born out of wedlock. This factor favors Father.

(5) Mental and physical health of the parents: There is no evidence that either

-4-

parent has any physical infirmity that would impact their ability to care for the child. Mother has been diagnosed with an anxiety disorder. She is seeing a Centerstone mental health counselor, is taking two prescription medicines, and has to report her counseling progress every two months to the Williamson County Court. Mother claims that all of her anxiety has arisen due to Father's actions. This factor favors Father.

(6) Community record of the child: Child's grades in school are excellent, but he has a significant number of absences and tardies. This factor does not favor either parent.

(7) Preference of child: The child is now ten years old and was not called to testify. There is no evidence either way. This factor does not favor either parent.

(8) Evidence of physical or emotional abuse: There is no proof of physical abuse, but Mother's telephone tirades with the child could not encourage a positive mental attitude in the child. This factor favors Father.

(9) Character and behavior of other persons in the home: There is no proof of anyone frequenting Mother's home. Father's family at home includes a grandfather who seems to be a good influence. This factor favors Father.

(10) Parent's past and potential future performance of parenting responsibilities and encouragement of a close relationship with both parents: Again, Mother has provided nearly all of the parenting, but she certainly has not encouraged a good relationship between Father and child. Each parent seems to be able and willing to provide and care for the child, although Father has more material wealth than Mother. Father's past performance as a father has not been outstanding, and this may have encouraged Mother's vindictive attitude toward Father. This factor favors Father.

The court found that five factors weighed in favor of Father, one favored Mother, and four favored the parties equally. Ultimately, the trial court concluded that the "best interest of the child would be best served if he were to spend more time with his Father." However, the trial court determined that due to the distance between the parties, their work schedules, and Preston's school schedule, it was not possible to split the parenting time equally between the parties. As a consequence, the court increased Father's parenting time and left Mother as Preston's primary residential parent.

Father relies on *Cranston v. Combs* and *Costley v. Benjamin* in support of his contention that the trial court erred in failing to assign greater weight to Tenn. Code Ann. § 36-6-106(10) when conducting its best interest analysis. *Cranston v. Combs*, 106 S.W.3d 641 (Tenn. 2003); *Costley v. Benjamin*, No. M2004-00375-COA-R3-CV, 2005 WL 1950114 (Tenn. Ct. App. Aug. 12, 2005). In *Cranston*, our Supreme Court found that the mother exhibited a "deliberate pattern of consistent interference with [the father's] court-ordered visitation rights" and upheld the trial court's order changing the child's primary residential parent from his mother to his father. *Cranston*, 106 S.W.3d at 645-46. The facts presented here are distinguishable. There is no evidence in the record to suggest that Mother interfered with Father's parenting time with Preston. In fact, the record shows that Father has exercised parenting time with Preston on a consistent basis in accordance with the residential schedule.

Father cites *Costley* for the proposition that "it is the public policy of the State of Tennessee that a child's best interest is served when (s)he is able to have a close and loving relationship with both parents." We agree that encouraging each parent to maintain "a loving, stable, and nurturing relationship with the child" is of great importance. *Costley*, 2005 WL 1950114, at *18 (quoting Tenn. Code Ann. § 36-6-404(b)(3)). However, courts are not required to elevate this policy concern over the other factors enumerated at Tenn. Code Ann. § 36-6-106(a). Moreover, Father's contention fails to acknowledge the preference of the legislature and the courts toward "continuity and stability" in residential placement and schedules. *Id.* at *17; *see also Pippin v. Pippin*, 277 S.W.3d 398, 404 (Tenn. Ct. App. 2008) (noting that "[e]xisting custody arrangements are favored since children thrive in stable environments").

Our review of the record leads us to conclude that the trial court appropriately reviewed the factors at Tenn. Code Ann. § 36-6-106 and considered them in light of the importance of the child's stability with regard to the parenting arrangement. As the trial court pointed out, Mother has been the primary caregiver for Preston for the majority of his life, and the evidence shows that Preston has thrived under her care. The evidence does not preponderate against the trial court's determination that Mother should remain Preston's primary residential parent; thus, we affirm the trial court's ruling in all respects.[4]

CONCLUSION

The decision of the trial court is affirmed. Costs of appeal are assessed against Father

---

[4] Father requests this Court to award him attorney fees and costs pursuant to Tenn. Code Ann. § 36-5-103(c). This statutory provision vests this Court with discretionary authority to award fees and costs in proper cases. *See Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). Father is not the prevailing party on appeal, and we decline to award him attorney's fees.

and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE