# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 8, 2016 Session

## ANGELA MICHELLE NEWBERRY v. JEREMY MACK NEWBERRY

**Appeal from the Circuit Court for Hamilton County**
No. 07D262     W. Neil Thomas, III, Judge

_____

**No. E2015-01801-COA-R3-CV**
**FILED-MAY 2, 2016**

_____

Father filed a petition to modify the parties' permanent parenting plan to make him the primary residential parent. The trial court granted Father's petition, finding that there had been a material change of circumstances and that a change of primary residential parent was in the best interest of the two younger children. Because the trial court applied an erroneous legal standard in making its determination of a material change of circumstances, we vacate and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Lucy C. Wright, Chattanooga, Tennessee, for the appellant, Angela Michelle Newberry.

Selma Cash Paty, Chattanooga, Tennessee, for the appellee, Jeremy Mack Newberry.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Angela Newberry ("Mother") and Jeremy Newberry ("Father") were declared divorced on April 8, 2010, with all other issues being reserved. In a final judgment entered on October 12, 2010, the trial court addressed the remaining issues, including

parenting provisions for the parties' three minor children.[1]  Mother was named the primary residential parent, and Father was given parenting time every other week from Friday after school until Tuesday morning before school, and every other Monday after school until Tuesday morning before school.  Father also had the children for four days during the summer.  Holidays were to "be determined by agreement of the parties."  The trial court ordered Father to pay child support in the amount of $1406 per month.  On November 16, 2010, the trial court modified the child support amount to $2197 per month to take into account all of Mother's child care expenses.

On February 23, 2011, the trial court entered an agreed order representing the parties' settlement of issues raised in several outstanding motions.  On the issue of child support, the parties agreed to a modification to take into account the birth of Father's fourth child and other changes.  The court ordered Father to pay Mother $1000 per month in child support beginning the first day of the month following the entry of the order.

On July 28, 2011, the trial court approved and entered a modified permanent parenting plan agreed to by the parties in mediation.  Under the plan, Mother remained the primary residential parent with Father having parenting time every other week from Friday after school until Tuesday morning before school.[2]  Specific provisions were included regarding holidays.  Child support remained at $1000 per month.  Father was to have the children every other week during the summer.  Decision making was to be joint.

Father filed the instant complaint to modify primary residential custody on April 3, 2014.  As grounds for his request, Father alleged:

> [Mother] no longer has the ability to run the household and care for the children.  [Mother] does not appear to be stable and is making poor parenting decisions.  [Husband] fears for the safety and well-being of the two youngest children, who are ages 8 and 10.  Mother does not assist the children with their homework and does not encourage the children to do assignments.  This is negatively impacting their education.  [Mother] allows their daughter, Makaila Raven Newberry, date of birth March 19, 1998, to date an older boy who is permitted in her bedroom.

Mother answered, denying Father's allegations and counterclaiming for a change in the previous parenting plan.  She alleged that Father had two children with his current wife prior to their marriage and that, after the birth of this couple's first child, Father had

---

[1] There was no actual parenting plan form; the parenting provisions were part of the judgment.

[2] Although the plan did not provide for alternate Monday parenting time, the parties continued this schedule as provided under the October 2010 plan.

another girlfriend. Mother further alleged that Father signed one of their children up for baseball in Ooltewah without consulting Mother (who lived in Dayton), and that the travel required by this decision caused disruption in the children's schedules. According to Mother's petition, she had moved to Dayton after the divorce to be closer to Father but, after about a year and a half, Father moved farther away, which had "caused issues with school nights." Mother therefore requested that the court modify the parenting plan to eliminate Father's Monday overnight parenting time and recalculate child support based upon the parties' current income and the new schedule.

Father subsequently amended his complaint, by agreement of the parties, to add the following allegations:

> [Father] alleges that [Mother] is guilty of parental alienation . . . . [Father] asserts [Mother] has told the parties' daughter, Makaila, about the parties going to court over custody and [Mother] allowed her to read the court documents in her possession. . . . Since she had read the documents, Makaila Newberry, has been very upset with [Father] and she knows contents of the court documents she would not otherwise know about.

> Furthermore, [Mother] has permitted and encouraged Makaila to lie about her boyfriend being in her room and the incident in February when they had no power at the house. [Mother's] actions have made Makaila angry with [Father] to the point Makaila no longer wants to spend time with her father.

> Finally, the father/daughter relationship has been further damaged such that he has always taken Makaila to her soccer games for four years now, and now she doesn't want him to take her.

Father requested injunctive relief to restrain Mother from making derogatory comments about him to or in front of the children, discussing the litigation with them, or disclosing the contents of the litigation documents to them. Father also requested that Mother be required to cooperate in teaching the children to respect him. Mother answered denying all of Father's allegations and denying that she was guilty of parental alienation.

On May 15, 2015, the trial court granted Father's motion to amend his petition to modify to add a proposed parenting plan. In addition to making Father the primary residential parent, the plan made Father the primary decision maker for educational and non-emergency health care decisions.

The matter was heard on January 15, 2015 and May 15, 2015. In its memorandum and opinion entered on July 14, 2105, the trial court noted that Father was asking for "a

reversal of position with respect to the original Parenting Plan entered in this case." Thus, Father would be designated the primary residential parent and Mother would have parenting time every other weekend from Friday until Tuesday and two days a week on alternate weeks. Mother withdrew her request for a change in the current plan.

The trial court stated that three main issues "evolved" during the hearing: "(1) Mason's [health]; (2) sports activities of the children; and (3) the school for the children." As to the first issue, Mason's health issues, the trial court determined, based upon the evidence from Mason's doctor, that this problem had resolved itself. With respect to education, there remained no issue regarding Makaila, the oldest child. Father "agreed that she may finish her senior year at Rhea County High School and may stay in Dayton to accomplish that result." The issue raised by Father regarding Makaila's boyfriend was no longer a real issue because she had not seen him in over four months. As to the education of the two younger children, the trial court determined that there had been a material change of circumstances. On the issue of athletic activities, the trial court expressed concern regarding "mother's support of and conduct at these activities, and it would appear to the Court that she is not only non-supportive but actively alienates herself from father." The trial court found that there had been a material change of circumstances with respect to the interest in and attendance of the parents, particularly Mother, at athletic activities.

The court went on to conclude that it was in the best interests of the children to grant Father's petition for modification and adopt his proposed parenting plan. A further hearing was to be held on the issue of child support.

In an order entered on August 20, 2015, the trial court denied both Mother's motion to alter or amend and amended motion to alter or amend. This appeal followed.

ISSUES ON APPEAL

Mother argues that: (1) the trial court erred in failing to apply the proper legal standard in determining whether a material change of circumstances had occurred to warrant a modification of the primary residential parent; (2) the evidence preponderates against the trial court's findings of fact and conclusions of law; and (3) the trial court erred in failing to properly review the transcripts of the relevant hearings and the record before issuing its memorandum opinion and ruling on subsequent motions.

ANALYSIS

Our review is de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. TENN. R. APP. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692

(Tenn. 2013); *Rigsby v. Edmonds*, 395 S.W.3d 728, 734 (Tenn. Ct. App. 2012). We review a trial court's conclusions of law de novo, according them no presumption of correctness. *Armbrister*, 414 S.W.3d at 692; *Rigsby*, 395 S.W.3d at 734.

A trial court's determinations of whether a material change of circumstances has occurred and where the best interests of children lie are factual issues. *Armbrister,* 414 S.W.3d at 692-93; *In re T.C.D*., 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Appellate courts must, therefore, presume a trial court's factual findings on these matters are correct and not overturn them unless the evidence preponderates to the contrary. *Armbrister,* 414 S.W.3d at 693. We have noted that trial courts have broad discretion in determining which parent should be the primary residential parent, and appellate courts are reluctant to second-guess a trial court's decision on this issue. *See Scofield v. Scofield,* M2006-00350-COA-R3-CV, 2007 WL 624351, at *2 (Tenn. Ct. App. Feb. 28, 2007). According to the *Armbrister* Court, a trial court abuses its discretion when it:

> appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.

*Armbrister*, 414 S.W.3d at 693 (quoting *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105 (Tenn. 2011)).

Modification of a court's prior order determining which parent should be designated the primary residential parent is governed by statute:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. *A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.*

Tenn. Code Ann. § 36-6-101(a)(2)(B) (emphasis added). A petition to change the primary residential parent of a child requires the court to conduct a two-step analysis: "The threshold question is whether a material change in circumstances has occurred since the entry of the prior [custody] order." *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007). Only if the court finds a material change in circumstances has occurred does it proceed to consider whether changing the primary residential parent is in the children's best interest. *Id.*

Although "there are no bright-line rules" for determining when a material change has occurred, there are a few important factors to consider: "(1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered;[3] and (3) whether a change is one that affects the child's well-being in a meaningful way." *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003); *see also Keisling v. Keisling*, 196 S.W.3d 703, 718 (Tenn. Ct. App. 2005) (same); *see generally Armbrister*, 414 S.W.3d at 701-04 (discussing difference required to prove material change in circumstances for purposes of changing primary residential parent versus modification of parenting schedule); *Boyer*, 238 S.W.3d at 255-257 (discussing evolution of standard for finding material change in circumstances).

The trial court's memorandum and order relies on *Armbrister*, 414 S.W.3d at 685, a case involving the modification of a parenting schedule, not a modification of the primary residential parent. The trial court also stated that, "under the present law that change [of material circumstances] may have actually been anticipated." This statement of the law is applicable to modifications of a parenting schedule, not to modifications of the primary residential parent. *See Armbrister*, 414 S.W.3d at 704. The trial court further asserted that a change of circumstances could arise from changes such as "a change in employment or a change in marital status." Tennessee Code Annotated section 36-6-101(a)(2)(C),[4] the subsection governing modifications of the residential parenting schedule, specifically lists "significant changes in the parent's living or working condition that significantly affect parenting."[5] From the language used by the trial court,

---

[3] In light of the Court's holding in *Armbrister*, 414 S.W.3d at 704, this consideration is no longer relevant in cases governed by Tenn. Code Ann. § 36-6-101(a)(2)(C), which concerns modification of a residential parenting schedule.

[4] Tennessee Code Annotated section 36-6-101(a)(2)(C) provides:

If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

[5] Such changes could constitute a material change of circumstances under Tenn. Code Ann. § 36-6-101(a)(2)(B) if they were determined by the trial court to qualify as "circumstances that make the parenting plan no longer in the best interest of the child."

we must conclude that the court applied the standard set out in Tenn. Code Ann. § 36-6-101(a)(2)(C), which applies to modification of the residential parenting schedule, not modification of the primary residential parent, which is governed by Tenn. Code Ann. § 36-6-101(a)(2)(B).  Thus, we agree with Mother's argument that the trial court applied the wrong legal standard to the facts of this case.

In light of this conclusion, we must vacate the trial court's decision and remand the case to allow the trial court to decide the issues under the proper legal standard, namely that set out in Tenn. Code Ann. § 36-6-101(a)(2)(B).  The remaining issues are pretermitted.[6]

CONCLUSION

The judgment of the trial court is vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion.  Costs of appeal are assessed against the appellee, Jeremy Mack Newberry, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[6] This Court has considered the additional authority submitted by the appellee and denies the appellant's motion to strike.