IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 21, 2019 Session

## LISA MARIE PATERSON (POTTER) v. SCOTT PATERSON

**Appeal from the Chancery Court for Johnson County**
No. 6182    John C. Rambo, Chancellor

_____

### No. E2018-00599-COA-R3-CV

_____

This appeal involves a request for, inter alia, the modification of child support. Because the trial court failed to provide sufficient findings of fact and conclusions of law, we are unable to effectively review the issues raised on appeal. Therefore, we vacate the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Lisa M. Potter, Mountain City, Tennessee, pro se.

Perry L. Stout, Mountain City, Tennessee, for appellee, Scott D. Paterson.

### MEMORANDUM OPINION[1]

### I. BACKGROUND

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides as follows:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

The parties, Lisa M. Potter ("Mother") and Scott Paterson ("Father") were married in Calvert County, Maryland, on June 27, 1998. A daughter ("the Child") was born on April 6, 2003. Shortly thereafter, Mother filed for divorce, and on January 24, 2005, she was awarded residential custody and child support in the amount of $1,107. The parties have been litigating over custody, visitation, and support since the divorce. In 2007, the foreign decree was entered in Tennessee. The following year, Father filed a motion to modify custody and the parenting plan. He asked for a downward deviation to compensate for travel expenses. Child support was deviated downward to $654 per month. On July 9, 2009, Father filed a petition to modify child support and the parenting plan, alleging that he had bought a house in Virginia in order to be closer to the residence of the Child. He asserted that his income had further significantly decreased since the entry of the court's order adopting the parenting plan. On February 3, 2012, a motion to adjust child support was filed by Father requesting a greater reduction in child support and credit for overpayments made during the past 12 months.

A "Statement of Evidence" filed by the trial court on June 14, 2018, and revised by the court on July 13, 2018, provides further history as follows:

> There were five hearings set that were continued. Hearing dates were May 4, 2012, July 13, 2012, August 31, 2012, November 29, 2012 and March 21, 2013.
>
> On May 20, 2013, there was an Emergency Hearing and Motion for Contempt Hearing. Several facts and findings were set forth in the Order from that day.
>
> Scott Paterson, Plaintiff/Appellee, appealed the decision. The Judgment was reversed and the case remanded on May 28, 2014.[2]
>
> From January 2015 to September of 2015 there were nineteen (19) entries to this file . . . includ[ing] several child support proposals. On September 4, 2015, this case was referred to The Court Clinic for evaluation of child, parties, and their recommendations.
>
> On February 10, 2016 the Report was submitted to Chancery Court from The Court Clinic . . . .
>
> On September 13, 2016 Scott Paterson, Plaintiff/Appellee, filed a Motion and Response to Court Clinic. It was during

---

[2] No. E2013-01569-COA-R3-CV (Tenn. Ct. App. May 28, 2014).

this filing that the request was made for equal decision making; equal or more parenting time; and change of pickup and drop-off location.

On September 28, 2016, parties were ordered to mediation and Clerk and Master to work on child support calculations. When attorney for Defendant/Appellant requested that the self-employed child support guidelines be used, the Chancellor said he would not. The Chancellor further stated that if we did not like the numbers, "… Appeal it."

Clerk and Master completed a child support calculation that was entered September 30, 2016.

Mediation was held on January 24, 2017. There was a second meeting with the parties and then he spoke with child. Judge Lauderback had recommended Scott Paterson attend Counseling with child, allowed child to take mother's phone on visitations with Father and allowed access to parties via email. Judge Lauderback requested another follow-up with the child on May and then spoke with both attorneys.

On January 26, 2018 Mediation report was filed from the Mediation in May 2017.

During the entire length of this case Lisa Potter, Defendant/Appellant, continuously brought up the issue with the Child Support calculations. Scott Paterson, Plaintiff/Appellee, is self-employed and owns LLCs and other properties. The child support calculations were based solely on [adjusted gross income] and none of the Child Support Guidelines for self-employed were used.

On January 26, 2018 a hearing was scheduled.[3] All parties and their attorneys were present, to include the parties' minor child. When the case was called, the parties' attorneys requested the Court conduct an in-chamber[s] interview with the parties' minor child. The Court agreed, and the Court, Clerk and Master, the parties' minor child, and the attorneys for the parties were present in the Court's chambers. Before testimony was received, the attorneys informed the Court they

---

[3] The remainder of this paragraph consists of the revision made by the trial court.

were in agreement for the child to have one cellphone. No court reporter was present and neither party was in the chambers.

The Court then discussed with the parties' minor child the requirement for her to testify truthfully. Satisfied that she understood her responsibility to tell the truth and that she was able to distinguish between true and false testimony, the Court instructed the Clerk and Master to place the witness under oath. The Court then proceeded to question the parties' minor child as a witness. Their daughter had opinions on her cellphone, about having therapy with father, and visitation. No testimony was received regarding child support. When the testimony of their child was completed, the attorneys requested an opportunity to discuss the case with their respective clients. The attorneys stated they were working on an agreement, the Court stated that if their discussions failed, the Court would finish the hearing. The Court then proceeded to take up other cases on the docket. Later that morning, the parties' attorneys informed the Court they had reached an agreement, and they would submit an agreed order. This agreement was later presented to the Court in the form of the Order and Parenting Plan entered on January 26, 2018.

Mother contends that she was not allowed to present her witnesses and evidence. She asserts that she was not in agreement with Parenting Plan.

According to Father, at the January 26, 2018 hearing in chambers, the trial court "first listened to the attorneys regarding the child support numbers." Mother's counsel "brought up his client's concern about the numbers in the Clerk and Master's report and the tax returns in it." Father's counsel argued that the report and the "tax returns had been available for over two years." Father's counsel further contended that this case had been ongoing since 2012 with Father paying $654 a month. According to Father, the trial court agreed with Father's position, used the report's numbers, and instructed the attorneys that if further tax filings revealed more than a 15% change, Mother would be free to file a motion to adjust.

Father further relates that after the trial court interviewed the Child in chambers with the Clerk and Master and attorneys present, the court informed counsel how "it was inclined to rule on visitation, transportation, communication, decisions, and other matters." The attorneys were notified that if this proposed ruling was agreeable to their clients, it would be entered as the order of the trial court. After counsel consulted with their clients, the agreement was made. The attorneys went to the Clerk and Master's

office and calculated the remaining child support matters. It was determined that Father had overpaid his child support by $8,377. That amount was divided by the remaining months left for Father to pay child support, resulting in a per month reduction of child support of $214. The current amount of child support was determined to be $489, reduced by the $214 overpayment, for a final award of $275 per month. The court's order was filed on March 2, 2018. Mother thereafter filed a timely appeal.

## II. ISSUES

We restate the issues raised by Mother on appeal:

A. Whether the trial court erred in not allowing a hearing and failing to allow Mother to provide testimony, evidence, and witnesses.

B. Whether the trial court erred in the calculation of child support.

C. Whether the trial court erred in failing to credit Mother for health insurance she provided.

## III. STANDARD OF REVIEW

Our review is de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review a trial court's conclusions of law de novo, according them no presumption of correctness. *Id.*; *Rigsby v. Edmonds*, 395 S.W.3d 728, 734 (Tenn. Ct. App. 2012).

A trial court abuses its discretion when it "'appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.'" (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)). *Armbrister*, 414 S.W.3d at 693.

## IV. DISCUSSION

The child support guidelines govern the process and criteria for determining the amount of a parent's child support obligation. Tenn. Code Ann. § 36-5-101(e); *see also Atkins v. Motycka*, No. M2007-02260-COA-R3-CV, 2008 WL 4831314, at *6 (Tenn. Ct. App. Nov. 6, 2008). Under Tennessee law, parents must "support their minor children in a manner commensurate with their own means and station in life." *Richardson v. Spanos*, 189 S.W.3d 720, 724 (Tenn. Ct. App. 2005).

The first step in determining child support is setting the parties' gross income. Tenn. Comp. R. & Regs. 1240-02-04(3); *see also Milam v. Milam*, No. M2011-00715-COA-R3-CV, 2012 WL 1799029, at *3 (Tenn. Ct. App. May 17, 2012) ("The integrity of a child support award is dependent upon the trial court's accurate determination of both parents' gross income.")

"[T]he amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive amount of child support owed." *Richardson*, 189 S.W.3d at 725. This presumptive amount is rebuttable, however, and trial courts may, in their discretion, deviate from the amount of support required by the child support guidelines. *Atkins*, 2008 WL 4831314, at *6. If a trial court elects to deviate from the child support guidelines, the court must "specifically state in written findings why the application of the Child Support Guidelines would be unjust or inappropriate." *Id.* (citing Tenn. Code Ann. § 36-5-101(e)(1)(A) and Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b) ). We review a trial court's decision regarding deviations from the child support guidelines pursuant to the abuse of discretion standard of review. *Id.*

Modification of a child support obligation is governed by Tennessee Code Annotated section 36-5-101(g); a court cannot modify child support unless the party moving to modify the obligation proves that there is a "significant variance ... between the guidelines and the amount of support currently ordered." A significant variance is defined as "at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order." Tenn. Comp. R. & Regs. 1240-2-4-.05(2)(c). In other words, "a parent must prove (1) the amount of his or her current net income and (2) the existence of a 'significant variance' between his or her current child support obligation and the obligation that would be required by the Child Support Guidelines based on his or her current income." *Chorost v. Chorost*, No. M2000-00251-COA-R3-CV, 2003 WL 21392065, at *6 (Tenn. Ct. App. June 17, 2003) (footnotes omitted).

Father contends that the income was reduced according to reasonable expenses. He further asserts that the Clerk and Master's report from the 2012, 2013, 2014, and 2015 tax returns went unopposed for almost two years during a period of time that Mother was represented by experienced trial counsel. Father notes that no motion for forensic accounting was ever filed and that Mother's counsel agreed if the 2017 numbers gave a 15% change, another petition could be filed. According to Father, the January 26, 2018, order was an agreed order with the guidance of the trial court.

Mother argues that the child support worksheets were not filled out using gross income. According to Mother, adjusted gross income was used, without putting back in depreciation and other factors. She states that the calculations result in a much lower income level, leading to a lower child support level. She contends that it is unclear what

was used for the determination of child support, noting that the last tax return in the file was for 2015. The order was entered in 2018, yet no up-to-date income information was used in the determination of the 2016 and 2017 child support.

Mother further observes that the downward deviation of the child support obligation was "without making specific written finding regarding how the application of the Child Support Guidelines would be unjust or inappropriate in the case" per Tennessee Code Annotated section 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b). Additionally, Mother contends that the court did not follow Rule 9.04 of the State of Tennessee First Judicial District Local Rules for Circuit, Chancery and Criminal Courts:

> Any order establishing or modifying child support tendered to the court for approval should either state that the support agreed upon is in compliance with the child support guidelines, or if not in compliance, the reason(s) for any deviation from the guidelines. The order must also state that the attorneys have counseled with their clients concerning their rights and obligations under the guidelines and that any deviation is an informed and considered decision on the part of the parties.

Although Mother admits that the trial court found there had been a material change in circumstances with Father moving closer, the court failed to then remove the deviation that was in the original child support order of November 7, 2008, i.e., the travel expense deviation. Per Rule & Regulation 1240-2-4.07(2)(a)(2): "If the circumstances that supported the deviation cease to exist, the child support order may be modified to eliminate the deviation irrespective of compliance with the significant variance requirement of 1230-2-4-.05." According to Mother, this was never considered when the court deviated the child support for "credit for overpayment." The court further failed to explain: "How, in its determination, (i) Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and (ii) The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount." Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(c)(3).

Mother further argues that the court failed to give her credit for the health insurance premiums that she has been paying for the Child. According to Mother, the court instructed the Clerk and Master to give her credit. Father contends that it was brought to the attention of the trial court that because Mother pays for a family policy, it costs nothing more to carry the Child along with the other child included on the family policy. He noted that Mother presented no evidence to counter this conclusion.

"We have repeatedly emphasized the importance of providing findings of fact and conclusions of law in accordance with Rule 52.01 of the Tennessee Rules of Civil

Procedure." *Brainerd v. Brainerd*, No. M2015-00362-COA-R3-CV, 2016 WL 6996365, at *5 (Tenn. Ct. App. Nov. 30, 2016) (citing *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *4-5 (Tenn. Ct. App. Aug. 31, 2015)). This is "not a mere technicality," and "'[s]imply stating the trial court's decision, without more, does not fulfill this mandate.'" *Brainerd*, 2016 WL 6996365, at *5 (quoting *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012)).

"When confronted with insufficient findings of fact," an appellate court may "vacate the decision and remand so that the trial court can make specific findings of fact and conclusions of law" or "conduct a de novo review of the record to determine where the preponderance of the evidence lies." *Brainerd*, 2016 WL 6996365, at *5. In this matter, we vacate the trial court order and remand the case for further hearing for the court to receive evidence and to make findings of fact and conclusions of law in compliance with Rule 52.01.

## V.  CONCLUSION

We vacate the order of the trial court and remand the case for further hearing for the trial court to receive evidence and to make findings of fact and conclusions of law in compliance with Rule 52.01. Costs of this appeal are assessed to the appellee, Scott D. Paterson.

 

_____
JOHN W. MCCLARTY, JUDGE

- 8 -