IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 28, 2016 Session

## TIMOTHY WAYNE MASSE v. MANDY JO MASSE COTTAR

### Appeal from the Circuit Court for Maury County
### No. 12249    Stella L. Hargrove, Judge

_____

### No. M2015-00822-COA-R3-CV – Filed March 21, 2016
_____

Mother and Father were married for eight years and had three children when they divorced in 2009. Mother was named the primary residential parent, and each party was awarded equal residential time with the children. In 2010 Mother moved from Spring Hill, where the parties had lived during their marriage, to Goodlettsville. When Mother attempted to remove the children from Maury County schools and enroll them in Robertson County schools, Father filed a petition to modify the parenting plan and to be named the primary residential parent. Following a trial, the court found that the parties' failure to follow the parenting plan constituted a material change of circumstances and that it was in the children's best interest for the primary residential parent designation to change from Mother to Father. Mother appealed, and we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Connie Reguli and Megan Woodson Miller, Brentwood, Tennessee, for the appellant, Mandy Jo Masse Cottar.

L. Robert Grefseng, Columbia, Tennessee, for the appellee, Timothy Wayne Masse.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Timothy Wayne Masse ("Father") and Mandy Jo Masse Cottar ("Mother") were married in 2001 and divorced on January 16, 2009. They have three minor children. Mother was named the primary residential parent when the parties were divorced, and each parent was awarded fifty percent of the residential parenting time. During their marriage, the parties lived in Spring Hill. Following the divorce, Mother remarried and relocated from Spring Hill, in Maury County, to Goodlettsville, in Robertson County. The children continued to attend school in Maury County even after Mother moved to Robertson County.

On July 24, 2014, Father filed a petition to modify the parties' parenting plan. Father asserted that a material change of circumstances had occurred and that it would be in the children's best interest for the primary residential parent designation to be changed from Mother to him. Father asked the court to award him 235 parenting days each year. The basis for Father's petition was Mother's plan to change the children's schools from Maury County to Robertson County, which she announced shortly before school was to begin in Maury County. In an email to Father dated July 22, 2014, Mother stated that the children were not eligible to attend Maury County schools because she, as the custodial parent, no longer lived in Maury County. She wrote, "I will now be enrolling them in Robertson County schools since I am the custodial parent and they should be enrolled where I live."

The trial court held a show cause hearing on July 30, 2014, and entered an order specifying that the children were to continue to be enrolled in the Maury County public school system unless the parties reached a joint decision to send them elsewhere, as the parenting plan provides. Mother then filed an answer to Father's petition and a counter petition to modify the parenting plan. Mother requested that she remain the primary residential parent and that the parties maintain their fifty percent residential time with the children, but she wanted the court to award her decision making authority for the children's educational and extracurricular activities. The parties engaged in discovery, in preparation for trial, and tried their case on February 27, 2015.

The parties' testimony showed that Mother works in Brentwood and Father works from home, in Spring Hill. A little over six months following the parties' divorce in January 2009, Mother filed a petition to modify the parenting plan because she was engaged to a man who lived in Cedar Hill, which is in Robertson County, and she wanted to relocate with the children to Cedar Hill. Father did not agree to change the children's schools from Maury County to Robertson County, and the parties went to mediation at

Mother's insistence. Mother ended up not marrying the man who lived in Cedar Hill, and so she dismissed her petition to modify. However, in June 2010 Mother married another individual, Addison Cottar, who lived in Goodlettsville, which is in Robertson County. Mother then moved to Goodlettsville to live with Mr. Cottar. Mother lived with Mr. Cottar in Goodlettsville from 2010 to sometime in 2013, when she moved back to Spring Hill for a few months. She and Mr. Cottar then moved to Cross Plains, which is also in Robertson County. At the time of trial, Mother testified that she was in the process of getting a divorce from Mr. Cottar and that she had begun dating someone else. She testified that she had moved out of the house she had shared with Mr. Cottar and was living with her brother, just a quarter mile away, in a house owned by her mother. Each of Mother's houses in Cross Plains was about sixty-eight miles from Father's house in Spring Hill.

Father remarried in May 2011. His current wife has a child from a previous marriage who lives with Father and his wife for eleven months of the year. Father's wife testified that Father is a good parent to his three children as well as to her child and that her child gets along well with the parties' three children when they are all together. Father and his wife live in Spring Hill.

According to the permanent parenting plan the trial court put into effect in 2009, when the parties were divorced, Mother and Father were awarded time with the children for a full week at a time before delivering them to the other parent. At the time of trial, the youngest child was in elementary school and the older two children were in middle school. The drive from Mother's house to Father's house was approximately one hour. Despite the terms of the parenting plan, Mother testified that when she had the children with her, she routinely dropped the youngest off with Father in the morning, where the child would wait for the school bus to pick him up and take him to school, and Mother would drive the older two children to their school. In the afternoon, the children went to Father's house after school, where they would stay until Mother picked them up after her work day ended. When they are with Mother, the children spend approximately two hours in the car traveling back and forth between Robertson County and Maury County on the days they have school, one hour in the morning and another hour in the afternoon/evening. Father expressed his concern that the children spend too much time in the car during the weeks they are with Mother during the school year. The parties agreed that the children's grades have not suffered as a result of their spending so much time in the car during Mother's weeks.

The evidence showed that Mother and Father both love and care for their children and they are able to work together for the benefit of the children. For example, the youngest child plays baseball in Maury County, and on days he has baseball practice, Father drives him to practice regardless of whether it is his week or Mother's week. When he has baseball, the parties' son stays with Father even during the weeks he is

supposed to be with Mother. Mother testified that when the elder daughter was involved with the pep band and was playing at a night game, this daughter would stay with Father during Mother's weeks to accommodate Mother's schedule. The younger daughter played soccer in Robertson County, and Mother testified that when she had practice during the week, Mother would pick her up from school, drive her to practice, and bring her back to school the next day, regardless of whether the practices occurred during Mother's week or Father's week. Because Father works from home and lives near the children's schools, both parties have agreed that the schools should contact Father during the day if an issue comes up with any of the children, even during Mother's weeks with the children.

Mother testified that she would like to move the children from Maury County schools to Robertson County schools. She explained that she has driven the children down to Maury County for years and now it is Father's turn to do the driving. She also testified that the school regulations of Maury County provide that the primary residential parent is supposed to live in Maury County for the children to be able to attend Maury County schools without paying a fee.

The children attend church with Mother in Robertson County. When they are with Mother, they participate in church activities on Wednesday evenings and on Sundays. Father testified that if he were designated the primary residential parent, he would be willing for the children to continue their participation in the church activities in Robertson County during the week on Wednesday evenings.

Mother and Father both testified that they believe it is important that the children spend time with each parent. Each party testified that the other parent is a good parent, although both Mother and Father had complaints about the other parent. Father complained that Mother told their eldest child, who is not Father's biological child, but who is his adopted child, that Father could never love her as much as Mother does. Mother agreed that this is what she believes:

> That's my feelings. I am her mother. I gave birth to her on August 28, 2001. I don't feel he could ever love her as much as I do. And that is not a derogatory statement towards Tim.

Father also complained that Mother has interfered with his ability to communicate with his younger daughter by text when she is with Mother and that she threatened to delete his wife from his daughter's Facebook page. Mother complained about some comments Father put on his Facebook page that were derogatory towards Mother.

## II. Trial Court's Ruling

After the close of evidence, the trial court issued a ruling from the bench granting Father's petition and designating him the primary residential parent. The court issued an order on March 16, 2015, that it amended two months later, on June 19. In its amended order, the trial court wrote, in pertinent part:

> [T]he Petitioner/Father has met the burden of proof by a preponderance of evidence establishing that a material change of circumstances has occurred as would warrant a change of custody/primary residential status for the parties' three (3) minor children. Specifically, the Court finds that the parties are not fully following the existing parenting plan because the Respondent/Mother has relocated and created the distance which currently exists between the parents in an apparent attempt to maintain two failed relationships with other men in her life. On the other hand, the Petitioner/Father had no realistic choice except to capitulate to the Respondent/Mother's relocation in an attempt to maintain the equal/split parenting arrangement contemplated in the original divorce decree.

> A material change of circumstances having been established, the Court further finds, after consideration of the statutory factors, that it would be in the best interest of the three (3) minor children that the Petitioner/Father be named the primary residential parent, and further, that he be granted the decision making as to all matters except the religious upbringing of the minor children. Simultaneously with the entry of this Order, the Court is also executing a revised permanent parenting plan which incorporates for the most part the Petitioner/Father's proposed plan (130 days to the Respondent/Mother and 235 days to the Petitioner/Father). . . . Although both parties may have spoken negatively about the other parent, the Court further finds that the statements made to the parties' eldest child . . . as to some supposed superiority of the Respondent/Mother's love and affection were indeed cruel, and that those cruel words pale in comparison as to anything the Petitioner/Father may have published on any social media. Although the parties contemplated a split-fifty/fifty parenting time schedule, the Court finds that because of the Mother's unilateral decisions and actions the Father has played a greater role and has been the primary caregiver. Both parents have equal love and affection for the children, but all of the children are doing well in school and are involved in a number of extra-curricular activities in Maury County, and there is no reason to change their involvement in any way by requiring a relocation to Robertson County. The parents have attempted to make decisions since the Mother moved in the best interests of the children, particularly the Father.

By far, he has been the one to provide continuity, stability, and a satisfactory environment for these children. He has capitulated with really no other choice, to maintain the stability and security and continuity for these children in the face of their mother's move.

Mother appealed from this order, claiming that the trial court erred in (a) finding there was a material change of circumstances warranting a change in the primary residential parent and (b) determining that it was in the children's best interest for Father to be named the primary residential parent.

III. ANALYSIS

A. Standard of Review

Our review is de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. TENN. R. APP. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013); *Rigsby v. Edmonds*, 395 S.W.3d 728, 734 (Tenn. Ct. App. 2012). We review a trial court's conclusions of law de novo, according them no presumption of correctness. *Armbrister*, 414 S.W.3d at 692; *Rigsby*, 395 S.W.3d at 734. A trial court's determinations of whether a material change of circumstances has occurred and where the best interests of children lie are factual issues. *Armbrister*, 414 S.W.3d at 692-93; *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Appellate courts must, therefore, presume a trial court's factual findings on these matters are correct and not overturn them unless the evidence preponderates to the contrary. *Armbrister*, 414 S.W.3d at 693. As our Supreme Court has explained,

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007).

*Id.*

The Court of Appeals has noted that trial courts have broad discretion in determining which parent should be the primary residential parent and appellate courts are reluctant to second guess a trial court's decision on this issue. *Reinagel v. Reinagel*, M2009-02416-COA-R3-CV, 2010 WL 2867129, at *4 (Tenn. Ct. App. July 21, 2010); *Scofield v. Scofield*, M2006-00350-COA-R3-CV, 2007 WL 624351, at *2 (Tenn. Ct.

App. Feb. 28, 2007); *see Armbrister*, 414 S.W.3d at 693 (opining that trial courts have broad discretion to work out details of parenting plans). According to the *Armbrister* Court, a trial court abuses its discretion when it:

> appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.

*Id.* (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)).

B. Material Change of Circumstances

In his petition, Father sought to have the primary residential parent changed from Mother to himself. Modification of a court's prior order determining which parent should be designated the primary residential parent is governed by statute:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. *A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.*

Tenn. Code Ann. § 36-6-101(a)(2)(B) (emphasis added).

A petition to change the primary residential parent of a child requires the court to conduct a two-step analysis. "The threshold question is whether a material change in circumstances has occurred since the entry of the prior [custody] order." *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007). Only if the court finds a material change in circumstances has occurred does it proceed to consider whether changing the primary residential parent is in the children's best interest. *Id.*

Decisions involving the custody of a child are among the most important decisions faced by the courts. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). The party seeking modification of the parenting plan to change the designation of the primary residential parent has the burden of proving a material change in circumstances. *Taylor v. McKinnie*, W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (citing Tenn. Code Ann. § 36-6-101(a)(2)(B)). The Supreme Court has explained "[t]here are no hard and fast rules" in determining whether such a material change in circumstances has occurred. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570

(Tenn. 2002).

> Although there are no bright-line rules for determining when such a change
> has occurred, there are several relevant considerations: (1) whether a
> change has occurred after the entry of the order sought to be modified; (2)
> whether a change was not known or reasonably anticipated when the order
> was entered; and (3) whether a change is one that affects the child's well-
> being in a meaningful way.

*Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003); *see also Keisling v. Keisling*, 196
S.W.3d 703, 718 (Tenn. Ct. App. 2005) (same); *see generally Armbrister*, 414 S.W.3d at
701-04 (discussing difference required to prove material change in circumstances for
purposes of changing primary residential parent versus modification of parenting
schedule); *Boyer*, 238 S.W.3d at 255-257 (discussing evolution of standard for finding
material change in circumstances).

The trial court based its determination that there was a material change of
circumstances on the fact that the parties were not following the terms of the permanent
parenting plan that was put into place when the parties were divorced in 2009. Mother
contends that an Agreed Order that the trial court entered in 2011 constituted a
modification of the parenting plan, and Mother asserts that she had already moved to
Goodlettsville before the entry of the Agreed Order. Thus, Mother argues, the children
have been traveling back and forth from Robertson County to Spring Hill since before the
time the Agreed Order was entered, and Father cannot show a material change of
circumstances has taken place following the entry of the Agreed Order.

The Agreed Order Mother relies on for this argument was entered in January 2011.
That order was very limited and modified only the start time of holidays and school-free
days for determining what time the children would be transferred from one parent to the
other; the transportation arrangements for holidays and school-free days; and Father's
child support obligation. No other changes were made. As the Tennessee Supreme Court
has interpreted Tenn. Code Ann. § 36-6-101(a)(2)(B), the material change of
circumstances must occur "after the entry of the order sought to be modified." *Rigsby*,
395 S.W.3d at 735 (quoting *Kendrick v. Shoemake*, 90 S.W.3d at 570) (itself quoting
*Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002))). This is because "[a] custody
decision, once final, is *res judicata* upon the facts in existence or reasonably foreseeable
when the decision was made." *Scofield v. Scofield*, M2006-00350-COA-R3-CV, 2007
WL 624351, at *2 (Tenn. Ct. App. Feb. 28, 2007).

As Father points out, the Agreed Order did not address either the primary
residential parent designation or the number of days the children spend with each parent,
and Father sought to change each of these aspects of the permanent parenting plan

- 8 -

through his petition. Moreover, the order Father sought to modify when he filed his petition was the permanent parenting plan dating from 2009, when the parties were divorced, not the Agreed Order that was entered in 2011. Thus, so long as there was a material change of circumstances after the entry of the permanent parenting plan in 2009, the trial court did not err in conducting a best interest analysis to determine whether a change in the primary residential parent was warranted.

Tennessee Code Annotated section 36-6-101(a)(2)(B) states that the parties' failure to adhere to the parenting plan may constitute a material change of circumstances when a party seeks to modify a court's prior decree pertaining to the designation of the primary residential parent. The issues Father is most concerned about and that led him to file the petition to modify are the number of hours the children spend in the car on school days during Mother's weeks and Mother's attempts to change the children's schools from Maury County to Robertson County. Courts are authorized to modify a parenting plan designating the primary residential parent "when required by unanticipated facts or subsequently emerging conditions." *Scofield*, 2007 WL 624351, at *4 (citing *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997)).

When the parties were divorced, Mother was living in the marital home, and Father was living in Columbia, in a house that was located in the Spring Hill school district. Mother did not move to Robertson County until sometime after the parties were divorced. Thus, it was not until after the 2009 parenting plan was put into effect that (1) Mother moved to Robertson County and the children began spending more time in the car driving back and forth from school (or from Father's house) to Mother's house in Spring Hill or that (2) Mother began trying to remove the children from their schools in Spring Hill to enroll them in schools in Robertson County. In addition, it was also not until after the 2009 parenting plan went into effect that Mother began dropping the youngest child at Father's house in the morning before school during her weeks or that the children went to Father's house after school to wait for Mother to pick them up before driving up to Robertson County. The parenting plan does not contemplate that Father will take care of the children during Mother's weeks. We find that these facts are sufficient to constitute a material change of circumstances that affects the children in a meaningful way for purposes of Tenn. Code Ann. § 36-6-101(a)(2)(B).

C. Best Interest Analysis

After finding a material change in circumstances has occurred, the trial court must determine whether changing the primary residential parent is in the children's best interest using the factors enumerated in Tenn. Code Ann. § 36-6-106(a). These factors include the following:

(1) The strength, nature, and stability of the child's relationship with each

parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. . . .;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a).

The trial court stated in the Amended Order that it had considered all of the statutory factors. It found that Mother's statement to the eldest child that Father could never love her as much as Mother was especially cruel and did not compare to anything Father posted on social media about Mother and that Father has played a greater role as caregiver due to Mother's "unilateral decisions and actions." The trial court found both parents "have equal love and affection for the children" and that both parents have worked to make decisions in the children's best interest since Mother has moved. However, the court found that "Father has been the one to provide continuity, stability and a satisfactory environment" for the children throughout Mother's moves. Additionally, and perhaps most important, the trial court found that the children are doing well in the Spring Hill school district, that they are involved in extra-curricular activities in Maury County, and that there is no reason for them to relocate to Robertson County, as Mother has sought to have them do.

Based on the totality of evidence in the record and the deferential treatment we are to accord the trial court's decision, we conclude that Mother has not established that the evidence preponderates against the trial court's findings that (a) Father proved by a preponderance of the evidence that there was a material change of circumstances or that (b) it is in the children's best interest that the primary residential parent designation change from Mother to Father. We note that as the children get older and are required to spend more time on homework or at school participating in extra-curricular activities, it will become more important that they reside closer to school and not spend so much time

driving back and forth from home to school each day.[1]

In modifying the permanent parenting plan, the trial court awarded Father sole authority to make educational decisions for the children. Mother contends the trial court erred in this regard and should have given her this decision making authority. Mother has made it clear that if she is able to decide where the children go to school, she will move them from Maury County to the Robertson County school system. As discussed above, however, the trial court found the children should not be removed from the Maury County school district, where they are thriving. Mother fails to convince us the trial court abused its discretion in giving Father the authority to decide where the children go to school.[2] As a result, we affirm the trial court's decision awarding Father this decision making authority.

## IV. CONCLUSION

The trial court's judgment is affirmed in all respects. Costs of this appeal shall be assessed against the appellant, Mandy Jo Masse Cottar, for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[1]We acknowledge the trial court's accommodation to Mother permitting her to take the children with her to her church on Wednesday evenings so they can continue their participation in her church's activities. However, we also recognize that this accommodation will terminate, according to the trial court's order, if the children's grades drop below a B or if Mother is unable to get the children to school on time the following morning.

[2]Moreover, we note that the 2009 parenting plan gave the parties joint decision making authority over the children's education. Despite this joint authority, however, Mother made the unilateral decision to remove the children from Maury County schools and enroll them in Robertson County schools without discussing the issue with Father, which is what led Father to file his petition to modify. This unilateral action by Mother further convinces us that the trial court did not err in giving Father sole authority to make future educational decisions for the children.