IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 13, 2016 Session

## NICOLE AQUINO WILLIAMSON v. PAUL LANDON LAMM

**Appeal from the Chancery Court for Maury County**
**No. 10710     Robert L. Jones, Chancellor**
_____

**No. M2015-02006-COA-R3-CV – Filed September 30, 2016**
_____

This case involves the modification of a permanent parenting plan under which the parents exercised equal parenting time. The mother, who was designated the primary residential parent in the original plan, filed a petition to modify and alleged a material change had occurred in that the child had reached school age and the distance between the parents made the parenting schedule unworkable. The father did not file a counter-petition but filed a competing parenting plan. After a hearing, the trial court changed the primary residential parent for the upcoming school year to the father, established a new residential parenting schedule, and invited the mother to file a new modification petition for the following school year. The mother appealed. We conclude the preponderance of the evidence does not establish a material change in circumstance sufficient to modify the primary residential parent but does establish a material change sufficient to meet the lower standard for modification of the residential parenting schedule. Consequently, we reverse the decision of the trial court and remand for a determination of a residential parenting schedule that is in the best interest of the child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Sharon T. Massey, Clarksville, Tennessee, for the appellant, Nicole Aquino Williamson.

Wesley Mack Bryant, Columbia, Tennessee, for the appellee, Paul Landon Lamm.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Paul Lamm ("Father") and Nicole Williamson ("Mother") were divorced on March 14, 2011. In the final divorce decree, the Chancery Court for Maury County, Tennessee approved and incorporated the parties' marital dissolution agreement and agreed permanent parenting plan, which governed custody and visitation for their only child, Landon. Under the agreed parenting plan, both parents had equal parenting time, and Mother was designated the primary residential parent.

Landon was less than two years old when the parties divorced. Under the terms of the agreed parenting plan, he spent alternating weeks with each parent. The plan provided that once Landon reached school age, the parents would jointly decide where he would attend school. If the parents could not reach a decision, they agreed to mediate the dispute. The parties further agreed that Landon would attend high school where Father was teaching at that time.

On February 2, 2012, Mother filed a "Petition for Change of Custody and to Modify Permanent Parenting Plan." In her original petition, Mother asserted several material changes had occurred. Although Mother was already designated the primary residential parent, she requested that she be named the primary residential parent and that the court schedule specific visitation for Father. The parents attempted to mediate their dispute without success.

Over a year later, Mother filed an amended petition, in which she alleged the original parenting plan should be modified because Landon had reached school age and the plan did not specify where he would live once he began school.[1] She renewed her request to be named the primary residential parent and for the court to determine a visitation schedule for Father. On November 22, 2013, the court entered an agreed order memorializing the parties' agreement that Mother's petition "regarding a residential sharing schedule" was premature and should be continued until the May before Landon was scheduled to begin kindergarten.

In June 2015, Mother and Father filed competing proposed parenting plans. Father did not file a counter-petition to be named the primary residential parent. The court heard testimony on both proposals at a hearing on June 4, 2015. Only Mother and Father testified.

---

[1] In his answer, Father admitted that this material change in circumstance had occurred.

2

A. Testimony at the Hearing

Understandably, most of the testimony at the hearing centered on the parents' schedules and their ability to spend time with Landon. Since the divorce, Mother remarried and shared a three-year-old daughter with her new husband. Mother worked full time as an attorney in a solo practice in Clarksville, Tennessee, where she lived following the divorce. Mother testified that she was generally able to arrange her work around Landon's schedule. She spent mornings with Landon and took him to his pre-kindergarten program before starting work. Mother explained that her court appearances were typically in the morning, and she scheduled her client appointments during the morning as well.

Mother had office space in a building with a shared receptionist, and although the building's office hours were posted as 8 a.m. to 4:30 p.m., she testified that she left by 2:30 p.m. to pick Landon up from school. Occasionally, she brought Landon back to the office with her or brought work home. On the weeks Landon was with Father, she usually worked longer hours.

Father was a high school baseball coach and teacher in Maury County, Tennessee. He had also remarried, but he remained in Columbia following the divorce. He and his wife had a daughter together, and his wife had a son from a previous marriage.

As a school teacher, Father's work day typically ended at 3 p.m. unless he had a faculty meeting. When Landon was with him, Father took him to his pre-kindergarten program in Maury County in the morning and picked him up most afternoons. Because his wife did not work on Fridays, she usually drove Landon that day.

During baseball season, Father often took Landon with him to practices and home games. His wife came to school after she finished work and would take Landon home when necessary. At times, his wife or her parents picked Landon up from school if Father's baseball schedule interfered. Father did not work during the summer months, although he coached one summer baseball team. According to Father, his summer coaching duties were minimal and only involved games two nights per week.

Father admitted he was busier during baseball season. Father explained that the baseball team began conditioning practices in August, but he had two assistant coaches that supervised those practices. His presence was required once baseball season officially began in February.

Baseball season generally ran from February to May. Starting in February, he supervised team practice every weekday until 5:30 p.m. The team also played thirty games each season, beginning in March, and participated in three tournaments. The games usually took place on Mondays and Tuesdays, so practices were held on the remaining weekdays plus

Saturday mornings unless a tournament had been scheduled for that week. After a home game, he was normally home by 9 p.m. but arrived home later after away games. Father testified that he attempted to minimize the time he was away from Landon through his control of the baseball schedule. For example, he tried to schedule shorter practices during the weeks Landon was with him.

According to Mother, the residential parenting schedule in the agreed parenting plan worked well but needed to change because Landon was ready to begin school. She testified that she was willing to honor the previous agreement concerning Landon's high school, but she filed her petition to modify because the parties could not agree where Landon would attend elementary and middle school.

Mother proposed enrolling Landon in the private school in Clarksville that she had attended as a child. Under her proposed plan, Landon would live with Mother during the school year while Father would have visitation every other weekend. In the summer when Father was not working, he would have Landon during the week, and she would have visitation every other weekend and for one week during the summer months. Mother explained that her plan best maximized the time each parent could spend with Landon.

Father filed a competing parenting plan which named him primary residential parent. Father wanted to enroll Landon in school in Maury County. Under his plan, Landon would live with Father during the school year, with Mother having visitation every other weekend. In the summers, Landon would live with Mother, and Father's summer visitation would consist of alternating weekends, one week in June, and one week in July. Father testified that his proposal would be better for Landon because he could provide Landon with more stability. Father also contended that his plan was better because Mother had not encouraged a good parent-child relationship between him and Landon. As support for this contention, Father explained that Mother allowed Landon to call his step-father "Daddy," and sometimes during baseball season Father had been unable to talk with Landon.

## B. CHANCERY COURT RULING

After the hearing, the court changed the primary residential parent from Mother to Father for "at least the 2015/2016 school year." The court adopted Father's proposed parenting plan with modifications. Under the new permanent parenting plan, effective August 1, 2015, Landon lived with Father during the week, but Mother had visitation every weekend.[2] During summer vacation, Landon lived with Mother during the week, and Father

---

[2] Father contends the trial court intended to award Mother visitation during the school year every other weekend, not every weekend as the new parenting plan provides. He filed a motion with this Court to remand this case to the trial court to correct this error. Because we conclude the trial court erred in its modification of the agreed parenting plan, we deny Father's motion as moot.

4

had visitation every other weekend, one week in June, and one week in July. The court also ordered Mother to pay $358.00 in monthly child support.

The court invited Mother to file another petition to change custody at the end of the school year. The court's order provided, in relevant part:

> The Court will consider a Petition to Modify Custody without the showing of a material change in circumstances by the Mother after the completion of the 2015/2016 school year to determine if the minor child should attend school in Clarksville, TN.

## II. ANALYSIS

Mother raises three issues on appeal: whether the trial court erred: (1) in finding Mother's testimony about her work schedule not credible; (2) in changing the primary residential parent designation; and (3) in its application of the statutory best interest factors. But we begin with the threshold issue of whether a material change in circumstance has occurred necessitating modification of the original parenting plan.

### A. STANDARD OF REVIEW

We review the trial court's factual findings de novo on the record, with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013). "Because '[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings themselves,' appellate courts 'are reluctant to second-guess a trial court's decisions.'" *In re Alexandra J. D.*, No. E2009-00459-COA-R3-JV, 2010 WL 5093862, at *3 (Tenn. Ct. App. Dec. 10, 2010) (quoting *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). We review the trial court's conclusions of law de novo with no presumption of correctness. Tenn. R. App. P. 13(d).

### B. MODIFICATION OF THE PERMANENT PARENTING PLAN

All final divorce decrees involving a minor child must include a permanent parenting plan. Tenn. Code Ann. § 36-6-404(a) (2014). Once a permanent parenting plan is incorporated in a final divorce decree, absent an agreement, the parties must comply with it unless it is modified by the court. *Id.* § 36-6-405(b) (2014). Tennessee courts apply a two-step analysis to requests for either a modification of the primary residential parent or the residential parenting schedule. *See, e.g.*, *In re T.R.Y.*, No. M2012-01343-COA-R3-JV, 2014 WL 586046, at *11-12 (Tenn. Ct. App. Feb. 12, 2014) (primary residential parent modification); *In re C.R.D.*, No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007) (parenting time modification). The threshold issue is whether

a material change in circumstance has occurred since the court adopted the current parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(B) (Supp. 2015). Only if a material change in circumstance has occurred do we consider whether a modification to the current parenting plan is in the child's best interest by examining the statutory best interest factors. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003).

1. Material Change in Circumstance

A change in circumstance with regard to a residential parenting schedule is "a distinct concept" from a change in circumstance with regard to custody. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. §§ 36-6-101(a)(2)(B), -101(a)(2)(C). In the context of a modification of custody, also known as a change in the primary residential parent, a material change in circumstance may "include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(B). Although there are "no hard and fast rules" for determining when a material change in circumstance has occurred, factors for our consideration include: (1) whether the change occurred after entry of the order sought to be modified; (2) whether the change was known or reasonably anticipated when the order was entered; and (3) whether the change affects the child's well-being in a meaningful way. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). Not every change in circumstance is a material change; "[t]he change must be significant before it will be considered material." *In re T.C.D.*, 261 S.W.3d 734, 744 (Tenn. Ct. App. 2007).

The threshold for establishing a material change in circumstance where the issue before the court is a modification of the residential parenting schedule is much lower. *See, e.g.*, *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. §§ 36-6-101(a)(2)(B), -101(a)(2)(C). The petitioner still must "prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest," and like a material change for modification of the primary residential parent, the change must have occurred after entry of the order sought to be modified. Tenn. Code Ann. § 36-6-101(a)(2)(C); *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007). However, unlike the standard for a change of primary residential parent, whether the change was reasonably anticipated when the prior plan was entered is irrelevant. *Armbrister*, 414 S.W.3d at 703. To modify a residential parenting schedule, "merely showing that the existing arrangement [is] unworkable for the parties is sufficient to satisfy the material change of circumstance test." *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006).

The "determination of whether a material change of circumstances has occurred" is a question of fact. *Armbrister*, 414 S.W.3d at 692. The parent seeking a modification of the permanent parenting plan has the burden of proving a material change by a preponderance of

the evidence. Tenn. Code Ann. § 36-6-101(a)(2). While normally we would review the trial court's finding of a material change de novo with a presumption of correctness, in this case, the trial court did not make a finding of a material change in circumstance. The court announced at the conclusion of the hearing that such a finding was unnecessary when modifying a permanent parenting plan.[3] We disagree. This threshold finding is statutorily required. *Id.* § 36-6-101(a)(2)(B); *see Garrett v. Garrett*, No. E2012-02168-COA-R3-CV, 2013 WL 1503033, at *4 (Tenn. Ct. App. Apr. 12, 2013); *Huntzinger v. Parham*, No. M2009-00045-COA-R3-CV, 2010 WL 175108, at *4 (Tenn. Ct. App. Jan. 19, 2010).[4] In the absence of a finding of a material change by the trial court, we review the record de novo to determine where the preponderance of the evidence lies. *See Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013).

We conclude the preponderance of the evidence in this case does not establish that a material change has occurred sufficient to modify the primary residential parent. We recognize that Landon has reached school age, and the current plan does not direct where he will attend elementary and middle school. Landon's changing age, however, does not constitute a material change in circumstance sufficient to change the primary residential parent. *See Rigsby v. Edmonds*, 395 S.W.3d 728, 736 (Tenn. Ct. App. 2012) ("The fact that a child gets a year older every year, inevitable as it is, cannot be regarded on its own as inherently a material change of circumstances for purposes of altering the primary residential parent."); *Hoover v. Hoover*, No. E2014-01629-COA-R3-CV, 2015 WL 4737413, at *6 (Tenn. Ct. App. July 16, 2015) (agreeing with trial court's conclusion that the fact that the child had reached school age was an insufficient change to modify custody). Likewise, Father's testimony that Mother allowed Landon to call his step-father "Daddy" and to miss a small number of phone calls during baseball season is insufficient evidence of a material change. Although interference with the parent-child relationship can be a material change sufficient to modify the primary residential parent, the evidence in this record does not rise to that level. *Compare Oliver v. Oliver*, No. M2002-02880-COA-R3-CV, 2004 WL 892536, at *4 (Tenn. Ct. App. Apr. 26, 2004) (finding sufficient evidence in the record to support a finding of material change based on a distinct pattern of alienation), *with Schroedel v. Bumgarner*, No. E2009-02299-COA-R3-CV, 2010 WL 4024931, at *14 (Tenn. Ct. App. Oct.

---

[3] The court stated:

> As far as I'm concerned – And I know there's a problem under the statute. The statute in one sentence talks about if there's a petition to change custody there must be a material change of circumstances. That's not required. You can go ahead and jump immediately to the best interest if we're merely modifying a parenting plan.

[4] For the same reason, the court erred in inviting Mother to file a future modification petition without the necessity of proving a material change in circumstance. *See Curry v. Curry*, No. M2007-02446-COA-R3-CV, 2008 WL 4426895, at *13-14 (Tenn. Ct. App. Sept. 18, 2008) (holding the trial court lacked authority to change the evidentiary standard specified in the statute for modification cases).

13, 2010) (holding the father's interference with the parent-child relationship did not rise to the level of a material change sufficient to change custody).

We find the proof in this record, however, does establish a material change that meets the lower standard required for modification of the residential parenting schedule. *See Rigsby*, 395 S.W.3d at 737 (holding evidence did not support a finding of material change to transfer custody but did support a modification of the parenting schedule); *Gentile v. Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at *7 (Tenn. Ct. App. Dec. 9, 2015) (agreeing that father did not meet burden of proving material change sufficient to change custody but finding proof of material change sufficient to modify residential parenting schedule). Given the distance between the parents' homes, the need to enroll Landon in school, and the obvious failure of the parents to reach an agreement, there is sufficient proof that the alternating weekly residential schedule in the current plan is unworkable. *See Rose*, 2006 WL 2390980, at *2 n.3 (explaining that a finding that the current plan is not working is enough to meet the lower standard).

## 2. Best Interest of the Child

The finding of a material change in circumstance does not end the inquiry. *Armbrister*, 414 S.W.3d at 705. Upon finding a material change, the court must then determine whether it is in the child's best interest to modify the residential parenting schedule. Tenn. Code Ann. §§ 36-6-404(b), -405(a). Although Mother argues the trial court erred in its best interest determination, the trial court's previous analysis of the best interest factors for purposes of modifying the primary residential parent is no longer applicable. On remand, the court should consider the statutory best interest factors and determine whether it is in Landon's best interest to modify the *residential parenting schedule*, and if so, what schedule would serve his best interest consistent with Tennessee Code Annotated § 36-6-106(a) (2014).[5]

## C. MOTHER'S CREDIBILITY

Finally, Mother argues the trial court erroneously found her testimony about her work schedule not credible. We have long held that trial judges, "having observed the demeanor of the witnesses and heard their testimony," are in a much better position to assess credibility than appellate courts. *In re M.J.H.*, 196 S.W.3d 731, 746 (Tenn. Ct. App. 2005). "[A] trial court's determination of credibility will not be overturned on appeal unless there is clear and

_____

[5] In considering a child's best interest, the court must "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the [best interest] factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors." Tenn. Code Ann. § 36-6-106(a).

8

convincing evidence to the contrary." *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 515 (Tenn. 2012). Nevertheless, even if the trial court's credibility determination in this case was in error, it does not affect the outcome of this case. Mother's work schedule was not relevant to the determinative issue of whether a material change in circumstance occurred. Consequently, we decline to address this issue.

### III. CONCLUSION

For the foregoing reasons, we reverse the decision of the chancery court modifying the permanent parenting plan and remand for the court to determine a residential parenting schedule that is in the best interest of the child. Because the child is in school and a return to the alternating weekly residential schedule in the original parenting plan would be difficult at this time, the current parenting plan will remain in effect only until the trial court can determine a new residential parenting schedule. On remand, we direct the trial court to promptly schedule a hearing and determine a new schedule.

_____
W. NEAL MCBRAYER, JUDGE