FILED
04/26/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 15, 2018 Session

## KRISTINA MARIE BOLIN v. JEFFREY MICHAEL BOLIN

Appeal from the Chancery Court for Sumner County
No. 2015-DM-373      Louis W. Oliver, Chancellor

_____

### No. M2017-01079-COA-R3-CV

_____

In this divorce action, the mother argues that, in making the father the primary residential parent, the trial court did not give adequate weight to the father's relocation with the children against her wishes at the time of the parties' separation. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Amanda Lynn Conklin, Murfreesboro, Tennessee, for the appellant, Kristina Marie Bolin.

Stephan Francis King, Nashville, Tennessee, for the appellee, Jeffrey Michael Bolin.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Kristina Marie Bolin ("Mother") and Jeffrey Michael Bolin ("Father") married in 2007 and had two children, William, born in 2010, and Lauren, born in 2013. For most of the parties' marriage, Mother was the primary breadwinner, and the parties moved a number of times to further her career.

In July 2012, Mother began working for Humana in Louisville, Kentucky, but she worked from the parties' home in Lexington. The parties agreed that Husband would stay home and care for the children while Mother was working. Mother went into the office in Louisville approximately once a week. In August 2014, Mother began working on her master's degree in business administration ("MBA") in a program requiring her to

attend classes on Fridays and Saturdays every other weekend. The maternal grandmother lived with the parties from July to October 2014 and assisted with the care of the children.

By 2014, the parties were experiencing difficulties in their marriage. On October 25, 2014, Mother returned home from an accounting class and found a letter from Father stating that he had taken the children and gone to stay with his parents in Hendersonville, Tennessee. Mother twice petitioned the Family Court of Fayette County, Kentucky for an emergency order of protection in October 2014, but the court denied both petitions on the grounds that they failed to "state an act or threat of violence." Mother filed a petition for divorce in Kentucky on October 27, 2014. On January 16, 2015, the Kentucky court held a hearing and, in an order entered on February 10, 2015, ordered a custody evaluation and awarded Mother temporary parenting time every other weekend. The Kentucky divorce action was nonsuited by the parties on December 1, 2015.

Mother filed a petition for divorce in Tennessee on December 2, 2015, on the grounds of irreconcilable differences and inappropriate marital conduct. Father filed an answer and counter-complaint alleging the same grounds. On December 21, 2015, Father also filed a motion to establish a temporary parenting schedule and for an injunction pendente lite to enjoin Mother from allowing the parties' children "to be in contact with or in the presence of any extramarital dating partners or paramours." Father filed a statement of income and expenses showing no income and monthly expenses of approximately $3,346.17 per month.

After a hearing on January 11, 2016, the trial court entered an order on January 21, 2016, in which it provided that the children would continue to reside with Father and to have weekend parenting time with Mother; Father would receive child support in the amount of $1,332.00 per month based upon Mother's income of $9,583.00 per month and Father's imputed income of $3,132.00 per month. The trial court denied Father's requests for temporary alimony and an injunction pendente lite.

On April 8, 2016, Mother filed a motion to modify the January 11, 2016 temporary parenting plan, arguing that there had been a material change of circumstances in that she was no longer residing with a member of the opposite sex and was entitled to credit for health insurance premiums she paid on behalf of the children. She requested a week on, week off parenting schedule. On August 26, 2016, the court entered an agreed order giving Mother additional temporary parenting time on long weekends and school breaks.

On September 13, 2016, Mother filed another motion to modify the January 11, 2016 temporary parenting plan based upon a substantial and material change in circumstances. She asserted that the older child was having disciplinary problems at school and faced out-of-school suspension, that Father had misinformed the school about

Mother's role in the child's education, and that the parties disagreed concerning whether the child should be on medication. Mother requested that the temporary parenting plan be modified to make her the primary residential parent. Father opposed the motion. The record does not contain an order addressing Mother's motion.

On February 3, 2017, Father filed his proposed parenting plan in which he provided that he would be the primary residential parent and Mother would have all three-day weekends during the school year, every fall and spring break, Mother's Day, alternating Easter and Thanksgiving breaks, half of winter vacation, and five weeks during summer vacation, for a total of 84.5 days a year. Under Mother's proposed parenting plan, filed on February 22, 2017, she would be the primary residential parent, and Father would have parenting time during all three-day weekends during the school year, every fall and spring break, all but ten days of summer vacation, half of Thanksgiving break, half of winter vacation, every Father's Day, July 4th, and Easter weekend, for a total of 111 days a year.

The case was heard on March 1 and 2, 2017. The witnesses included Janie Berryman, Ph.D., a psychologist who performed a custody evaluation. The trial court entered its final decree of divorce, incorporating a memorandum opinion and order, on April 25, 2017. Based upon the letter that Father wrote to Mother in October 2014, the court concluded that Father did not "abscond" with the children as Mother claimed, but that he was attempting to save the marriage. The trial court granted the divorce to Father based upon inappropriate marital conduct. The court went through all of the statutory factors regarding custody set out at Tenn. Code Ann. § 36-6-106(a) and concluded that Father should be the primary residential parent. Wife would have the children all three-day holiday weekends during the school year and every fall and spring break. She also had the option to visit the children in Tennessee an additional time every month with two weeks' notice to Father; these visits would be from 10:00 a.m. Saturday to 4:00 p.m. Sunday. Moreover, Mother would have parenting time for the first eight weeks of summer vacation. The parenting plan divides the remaining holidays.

On May 31, 2017, the trial court denied Father's motion to amend. Mother appeals.

We consolidate Mother's appellate arguments as follows: whether the trial court abused its discretion in failing to give adequate weight to Father's relocation with the children over Mother's objection in its determination of the primary residential parent and the parenting schedule.

STANDARD OF REVIEW

Our review of the trial court's findings of fact is de novo with a presumption that the findings are correct unless the evidence preponderates otherwise. TENN. R. APP. P.

13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). Evidence preponderates against the trial court's findings of fact when it "support[s] another finding of fact with greater convincing effect." *Hopwood v. Hopwood*, No. M2015-01010-COA-R3-CV, 2016 WL 3537467, *4 (Tenn. Ct. App. June 23, 2016) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000)). We review a trial court's conclusions of law de novo, according them no presumption of correctness. *Armbrister*, 414 S.W.3d at 692; *Rigsby v. Edmonds*, 395 S.W.3d 728, 734 (Tenn. Ct. App. 2012).

Trial courts have "'broad discretion'" when making determinations concerning the primary residential parent and the parenting schedule. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)); *see also Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). Consequently, a trial court's decision regarding a permanent parenting plan is "'peculiarly within the broad discretion of the trial judge'" and will be set aside only for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (quoting *Suttles*, 748 S.W.2d at 429). A trial court abuses its discretion when it "'appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.'" *Id.* (quoting *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105 (Tenn. 2011)). Under the abuse of discretion standard, the trial court's decision "'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge*, 42 S.W.3d at 85 (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

Because they are able to observe the witnesses and make credibility determinations, the trial courts are in a better position than appellate courts to fashion an arrangement that serves the best interest of the child. *See Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *Armbrister*, 414 S.W.3d at 693).

ANALYSIS

When making a determination regarding the primary residential parent, the court must base its decision on the best interest of the child. Tenn. Code Ann. § 36-6-106(a). As this Court has previously stated:

> Determining a child's best interest is a "fact-sensitive inquiry" that does not call for "rote examination of each of the [relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case."

*In re William K.*, No. M2014-01872-COA-R3-JV, 2015 WL 6164849, at *3 (Tenn. Ct. App. Oct. 20, 2015) (quoting *Solima v. Solima*, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *4 (Tenn. Ct. App. July 30, 2015)).

The trial court analyzed the factors required pursuant to Tenn. Code Ann. § 36-6-106(a) as follows:

46. To quote from the statute: 1) "the strength, nature and stability of the child's relationship with each parent, including whether one parent has performed the majority of parenting responsibilities related to the daily needs of the child." With regard to this factor, the Court finds that both parties have strength and stability in their relationships with the Children. However, the Court finds that Husband has performed the majority of parenting responsibilities relating to the daily needs of the Children. There has been testimony from both sides that Husband basically had the responsibility for the care of the Children while Wife was working, and that she would go into her office and close the door. Wife would be on the telephone a great deal of the time, and Husband would be taking care of the Children. Even though Wife was physically in the home, that does not mean she was caring for the Children. The testimony that the Court finds compelling was testimony from Husband that Wife would take breaks, from time to time, from her office activities, but that she was a busy professional and Husband performed the majority of care of the Children. So, the Court finds that this factor favors Husband.

47. The second factor is each caregiver's past or potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent/child relationship between the child and both of the child's parents consistent with the best interests of the child. . . .

48. . . . The Court will find that that factor is not of any consequence in this case. It does not favor either party, but favors both parties.

49. The third factor to consider is the refusal to attend a court-ordered parent education seminar. That has not occurred in this case. . . .

50. The fourth factor to consider is the disposition of each parent to provide the child with food, clothing, medical care, education, and other necessary care. The factor favors both parents.

51. The fifth factor to consider is the degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities. Again, looking at the history of this case, the Court finds that *from the births of the Children forward*, Husband has been the primary caregiver. Wife has been the

primary breadwinner. As Husband has taken greater responsibility for performing the parental responsibilities, [this] factor favors him.

52. The sixth factor to consider is the love, affection and emotional ties existing between each parent and the child. The Court certainly finds that love, affection and emotional ties exist between each parent and the Children.

53. The seventh factor to consider is the emotional needs and developmental level of each child. In this case, again, this factor favors both parties. . . .

54. The eighth factor to consider is the moral, physical, mental and emotional fitness of each parent as it relates to his or her ability to parent the child. The [statute] also makes reference to Rule 35 of the Tennessee Rules of Civil Procedure regarding a mental examination of a part [sic] or of a parent. . . . So, the Court finds that factor number eight favors both parties.

55. The ninth factor to consider is the child's interaction and inter-relationships with siblings, other relatives, and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school or other significant activities. Husband has testified that Will attends kindergarten at Indian Lake Elementary School. Will is adapting to that. He has made a number of friends, both in the neighborhood and at school. Husband also testified that the younger child, Lauren, attends day school on Mondays, Wednesday and Fridays at First United Methodist Church, and that she has adapted to doing so. There has been no testimony that Lauren has had any problem attending there.

56. Husband resides with his parents, the paternal grandparents. Sherry Bolin, the paternal grandmother, testified that she and her husband have a loving relationship with the Children, that she has provided a great deal of support to the Children and to Husband, and that a number of other relatives [live] in the Middle Tennessee area, who can be and have been supportive, and who visit from time to time.

57. Wife testified that the Children have developed relationships with a large number of children. The Court recalls that she said that there are more than 30 children in the neighborhood where she resides, that the Children's relationships with others among those children are strong and fun for them, that she takes the Children to her club, that they have had swimming lessons and they have been involved in other activities. The

Children are around the maternal grandmother, from time to time, but she now lives in Florida.

58.    The Court finds, in this case, that this ninth factor favors Husband.  The interaction and relationships of the Children with relatives, as well as their attendance at school, favors Husband.  The Court notes that Wife offered no testimony as to what alternative[s] are available for the Children to attend school in Ohio.[1]  The Court listened for testimony about that, but did not hear of any plans being offered to indicate that Wife had made inquiries as to where the Children might attend school.

59.    The tenth factor to consider is the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment.  The Court finds that that is certainly a very important factor.  That is a major factor that was relied on in the testimony of the expert witness, Dr. Berryman.  The Court is certainly of the opinion that the statute places emphasis on the stability factor by reason of the statement made in the preamble to the factors.  There has been a lot of argument over whether Husband left or was entitled to leave, but, nevertheless, that did occur, and Wife takes some responsibility for that having happened.

60.    The Children have lived with Husband since October 2014.  That's a period of more than two years prior to our trial date.  There has been no showing that this stability has been anything but favorable to the Children.  [There] was rebuttal testimony from a private detective that the younger child, Lauren, may have been left at home for a period of anywhere from eight to 10 minutes, but there was no other proof in that regard that the Court felt was compelling enough to affect this stability issue.  Now, the Court certainly notes that a child Lauren's age, or even a child Will's age, should not be left alone.  The Court can only presume that, if that did happen, the child was asleep and it was a quick trip to the corner.  However, the Court cannot find that even that should be tolerated.  Nevertheless, there was insufficient evidence to support a negative finding on that issue.  So, the Court finds that, certainly, factor number 10 favors Husband.

---

[1] The trial court found that Mother began an intimate relationship with Casey Budd within sixty days of the parties' separation.  At some point prior to the parties' divorce, she moved in with Mr. Budd in Ohio and would not disclose where she was living.  Mother was living in Ohio at the time of trial.

61. The eleventh factor to consider is whether there is evidence of physical or emotional abuse to the child or the other parent or to any other person. . . . In this case, this factor favors neither party.

62. The twelfth factor to consider is the character and behavior of any other person who resides at or frequents the home of a parent and such person's interaction with the child. . . . So, the Court finds that factor number 12 favors neither parent. . . .

63. Factor number 13 concerns the reasonable preference of a child 12 years of age or older. That factor does not apply in this case.

64. The fourteenth factor to consider is each parent's employment schedule, and the Court may make accommodations consistent with those schedules. . . .

65. . . . So, the Court finds that the fourteenth factor does not favor either parent.

66. The Court deems that there are no other factors that are relevant in this case. The Court finds that the primary residential parent should be the Husband in this case, as was determined on a temporary basis when the case started, but the Court's finding is based on the testimony elicited over two days of trial at the final hearing.

(Emphasis added).

Mother acknowledges that "the Trial Court thoroughly considered the factors set forth in Tenn. Code Ann. § 36-6-106 and properly recited its findings of facts and conclusions of law." She asserts that the trial court "failed to acknowledge [her] role as a working [m]other in the care of the parties' children, labeling her the 'breadwinner,' and concluding that somehow her earnings lessened her parenting responsibilities." The trial court found that Mother was the primary breadwinner and that Father was the primary caregiver for the children. The basis for the trial court's determination that Father was the primary caregiver was his performance of the majority of the tasks involved with caring for the children, not Mother's earnings. Mother's reliance on *Jacobsen v. Jacobsen*, No. M2012-01845-COA-R3-CV, 2013 WL 1400618 (Tenn. Ct. App. Apr. 5, 2013), is misplaced as the appellate court in *Jacobsen* directed the trial court to make the mother the primary residential parent because the trial court failed to consider the father's abuse. *Jacobsen*, 2013 WL 1400618, at *7-8.

Mother argues that "the Trial Court placed greater weight on the circumstances existing as a result of the pending divorce action in considering what was in the best

interest of the children, than those which existed during the marriage." The trial court's general findings of fact and analysis of the statutory factors do not support Mother's argument. In evaluating the strength and stability of the parties' relationships with the children under the first factor, the trial court examined each parent's role during the marriage and concluded that Father "performed the majority of care of the Children." Under the fifth factor, the trial court specifically found that Father had been the children's primary caregiver "from the births of the Children forward."

Mother's main argument is that the trial court failed to give adequate weight to Father's relocation with the children to Tennessee against her wishes. We disagree. The trial court made the following pertinent findings of fact:

> 10. The Court heard a great deal of testimony about the time of the parties' separation and the events that led up to and occurred after the separation. Exhibit 8, in evidence, is a letter written by Husband. This letter demonstrated to the Court, and the Court finds, that Husband was interested in saving the marriage. This was not an absconding event with the Children. Husband testified that there had been a discussion, previously, about Husband taking a sabbatical or a break from Wife, which Wife refused to allow him to do. In fact, Husband testified that Wife removed the keys to the parties' vehicles from Husband's possession, and would not allow him to go.

> 11. The event of Husband leaving while Wife was away attending her classes is not considered by this Court to have been absconding with the Children. However, both parties testified that Husband moving with the children had not been discussed. Husband had been the primary care taker of the Children during this period of time. The Court notes that he was unemployed at the time, and it does not seem an unusual event for him to leave with the Children.

> 12. The letter (Exhibit 8) is compelling to the court. It does not appear to lack sincerity, and the Court is of the opinion that this letter was written in an attempt to get the attention (for lack of a better term) of Wife regarding his feelings and his interest in attempting to salvage the marriage and the family. Husband did state in the letter he was contacting an attorney.

> 13. The Court always considers the marriage and the situation, such as this, not only a marriage between the two individuals, but, in essence, a marriage between the two individuals and their children. . . . In this case, the Court finds, certainly, that Husband was interested in salvaging the family relationship.

. . .

21.    After the parties separated and Husband came to Sumner County, Tennessee, where his parents are located, Wife, within a period of about three weeks, got on a dating service. She testified, twice, that she was on that dating service for the purpose of trying to see if Husband was on the dating service trying to attract another female. She testified that she did not find him. She did, however, find Mr. Casey Budd, and she started an intimate relationship with him within 60 days. She, in fact, moved in with Mr. Budd, and would not disclose where she was living.

Thus, contrary to Mother's assertions, the trial court considered Father's actions in moving to Tennessee with the children, as well as Mother's actions around the same period of time. In its findings regarding the tenth statutory factor, the importance of continuity, the court stated: "There has been a lot of argument over whether Husband left or was entitled to leave, but, nevertheless, that did occur, and Wife takes some responsibility for that having happened." The court went on to find that "[t]here has been no showing that this stability [of living with Father since October 2014] has been anything but favorable to the Children." The trial court concluded that factor ten favored Father. Most of the cases cited by Mother regarding Father's relocation are distinguishable on the basis that they do not involve original divorce or custody actions. *See McClain v. McClain*, 539 S.W.3d 170, 207 (Tenn. Ct. App. 2017) (affirming trial court's modification of parenting plan based on parental alienation); *Broadnax v. Lawrence*, No. E2016-01176-COA-R3-CV, 2017 WL 2482986, at \*26 (Tenn. Ct. App. June 8, 2017) (affirming trial court's determination that mother's proposed relocation was not for reasonable purpose under statute governing parental relocation for divorced parents); *Skowronski v. Wade*, No. M2014-01501-COA-R3-CV, 2015 WL 6509296, at \*9 (Tenn. Ct. App. Oct. 27, 2015) (affirming trial court's modification of parenting plan to make father the primary residential parent after mother moved out-of-state without providing prior notice).

The case of *Dayhoff v. Cathey*, No. W2016-00377-COA-R3-JV, 2016 WL 4487813 (Tenn. Ct. App. Aug. 25, 2016), cited by Mother, is factually distinguishable from the present case. In *Dayhoff*, the mother relocated with the child from West Tennessee to Middle Tennessee after this Court vacated a prior judgment of the trial court and remanded the case for an evidentiary hearing prior to the entry of a permanent parenting plan. *Dayhoff*, 2016 WL 4487813, at \*1. On remand, the trial court applied the parental relocation statute, Tenn. Code Ann. § 36-6-108, and found that the mother's relocation did not have a reasonable purpose and was for vindictive reasons pursuant to subsection (d) of the statute. *Id.* at \*3. The court then conducted a best interest analysis, ordered the mother to return the child to Jackson to spend the remainder of the summer with the father (with weekend visits with the mother), and gave the mother the opportunity to state her intentions as to her residence. *Id.* After the mother gave notice of

her intention not to relocate within fifty miles of the father's residence, the trial court designated the father the primary residential parent. *Id.*

On appeal, this Court reiterated that the "parental relocation statute is inapplicable when the trial court is making an initial custody decision or parenting arrangement for the child even if a parent is relocating." *Id.* at *5. We went on, however, to conclude that "we discern no error in the trial court's consideration of Mother's relocation, her motives for moving, and how the move impacted the children and their relationship with Father." *Id.* at *6. The proposed relocation was relevant in the context of the court's analysis of the child's best interest. *Id.* In *Dayhoff*, the court found that the mother moved to a different city than the one listed in her notice to the father; she moved into the home of her boyfriend and his mother, where her son slept on the couch for a period of time and her daughter shared a room with the boyfriend's mother. The mother's employment change was a lateral move; and the trial court found that there was no valid reason for the move except to be with her boyfriend. *Id.* The trial court also "found that '[t]he children have been moved around from house to house and school to school too often for a kindergartener and first grader,' which reflected 'poor decision making' by Mother." *Id.* The trial court stated that mother thwarted the father's efforts to visit the children before and after the move. *Id.* at *7. She unilaterally eliminated the father's weekend visitation on several occasions, resulting in periods of up to forty days when the children did not see their father. *Id.* The mother refused to tell the father where the children lived or where they went to school and failed to give their school the father's contact information. *Id.* She denied the father's request for copies of their birth certificates and social security cards. *Id.*

The facts in the present case are not similar to those in *Dayhoff*. Father invited Mother to come see the children in Tennessee and complied with the court-ordered parenting schedule. He did not attempt to hide from Mother where he and the children were living. Mother, however, refused for a time to tell Father where she was living or where the children were when they were with her.

Mother also cites *Grigsby v. Alvis-Crawford*, No. W2016-00393-COA-R3-JV, 2017 WL 417221 (Tenn. Ct. App. Jan. 31, 2017), a case in which the mother "moved out of the house with the child and refused to let Father see or talk to him." *Grigsby*, 2017 WL 417221, at *1. The mother was soon hospitalized for an extended period of time and the child lived with the maternal grandparents. *Id.* When the maternal grandparents would not allow him to see or speak with his child, the father filed a petition, and the court awarded him immediate temporary custody of the child. *Id.* The mother then filed a petition for custody. The trial court determined that it was in the best interest of the child for the father to be the primary residential parent, and the appellate court affirmed. *Id.* at *1, 3. In reaching this decision, this Court emphasized Tenn. Code Ann. § 36-6-106(a)(2), "'the willingness and ability of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both . . .

parents.'" *Id.* at *3 (quoting Tenn. Code Ann. § 36-6-106(a)(2)). The court found that "Father has been willing to facilitate this parent-child relationship while Mother has hindered it at times." *Id.*

In the present case, Mother cites the language from *Grigsby* quoted above and her own testimony to argue that Father and the paternal grandmother "were attempting to shut her out of the children's lives." She asserts that she was not consulted about the children's enrollment in school and was not listed as the alternate parent on school forms. Father presented evidence that he listed Mother on William's school registration forms in April 2016. He admitted that Mother's name was not listed on Lauren's preschool registration form, which the paternal grandmother had completed, but stated that he had rectified the omission. Mother further asserts that Father "did not consult with [Mother] in seeking a diagnosis for their eldest child . . . with regard to ADHD." Father acknowledged that he had not notified Mother prior to taking the child to see Dr. Steven Johnson, his pediatrician. Dr. Johnson referred the child to Dr. Ellis, who made the diagnosis of ADHD. Prior to taking the child to see Dr. Ellis, Father informed Mother that he was going to have William evaluated; according to Father, she did not object. The day after the appointment, Father's attorney sent Mother's attorney an email that the child had been seen by Dr. Ellis. All of the documents provided to Father by Dr. Ellis were provided to Mother's attorney. The evidence does not preponderate against the trial court's finding that the second statutory factor does not favor either party in this case.

Finally, although she does not devote much of her brief to the argument, Mother asserts that the trial court erred in its determination of the parties' parenting schedule. In particular, she argues that the trial court "did not seek to maximize [Mother's] time, but rewarded [Father's] actions of moving the children to Tennessee by crafting a schedule that allows [Mother] abbreviated visitations with the children during the school year and most, but not all, of the summer vacation."

Courts are directed to fashion a parenting arrangement that allows "both parents to enjoy the maximum participation possible in the life of the child" in accordance with the factors enumerated in Tenn. Code Ann. § 36-6-106(a), "the location of the residences of the parents," and "the child's need for stability." Tenn. Code Ann. § 36-6-106(a). As stated above, our standard of review with respect to a trial court's determination of a parenting schedule is the abuse of discretion standard. *Armbrister*, 414 S.W.3d at 693. Thus, "[i]t is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge*, 42 S.W.3d at 88.

We find no merit in Mother's argument regarding the parenting schedule. Mother chose to increase the distance between the two parties' residences by moving to Ohio. Given the distance between the two parties' homes, the trial court crafted a parenting schedule giving Mother a generous amount of parenting time. Mother suggests that

Father should bear the cost of transportation or be responsible for bringing the children closer to her home.  The bases for her argument are the fact that she has less parenting time than Father and her assertion that the trial court should have given greater weight to Father's relocation with the children prior to the divorce.  As we have already approved the trial court's reasoning on both counts, we reject Mother's transportation argument.

We deny both parents' requests for attorney fees on appeal.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Kristina Marie Bolin.  Execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE